1999 UT 35

**C.T., a minor, By and Through his guardian ad litem, Albert TAYLOR, Plaintiff and Appellee,**

v.

**Scott R. JOHNSON, Defendant and Appellant.**

No. 960466.

Supreme Court of Utah.

April 13, 1999.

**480**

John L. Black, Sr., Salt Lake City, for plaintiff.

Joseph J. Joyce, Salt Lake City, Kristin Van Orman, for defendant.

HOWE, Chief Justice:

¶ 1 Defendant Scott R. Johnson appeals from an order denying his motion for a new trial or, in the alternative, for a remittitur. He moved for a new trial after the jury awarded plaintiff C.T. $10,300 in compensatory damages and $25,000 in punitive damages in this personal injury action. He contends that (1) the compensatory damages award was erroneous because C.T. did not meet the threshold no-fault insurance requirements of Utah Code Ann. § 31A–22–309(1); and (2) the punitive damage award was barred by Utah Code Ann. § 78–18–1(a), which requires an award of compensatory or general damages before punitive damages can be awarded.

## FACTS

¶ 2 This case arises from an automobile accident that occurred when Johnson, who was driving under the influence of alcohol ("DUI"),[1] crossed into oncoming traffic and collided with C.T.'s vehicle. C.T. filed this action against Johnson, seeking both compensatory and punitive damages. Johnson admitted negligence and successfully moved for a bifurcated trial with the first phase addressing C.T.'s compensatory damages claim and the second addressing his punitive damages claim.

¶ 3 At the close of the first phase of trial, the jury found that Johnson had proximately caused C.T.'s injuries, that those injuries

1. Johnson was charged and convicted of DUI following the accident.

2. Although C.T. claimed that he had sustained $4,596 in medical expenses (i.e., special dam-

were not permanent, and that C.T. had sustained a total of $339 in medical expenses.[2] The jury then awarded C.T. $10,339 in compensatory damages.

¶ 4 In the second phase, the parties stipulated that Johnson had been convicted of a DUI charge arising out of the accident. Evidence was adduced of Johnson's financial resources. The jury awarded C.T. $25,000 in punitive damages.

¶ 5 Before the court entered judgment on the jury's verdicts, Johnson moved to strike both damage awards. He argued that the compensatory damages award was improper because the jury findings established that C.T. had not met any of the threshold no-fault insurance requirements of section 31A–22–309(1). Furthermore, he asserted that because C.T. was not entitled to an award of general or compensatory damages, his punitive damages claim was likewise barred by section 78–18–1(1)(a), which provides that "punitive damages may be awarded only if compensatory or general damages are awarded." The trial court denied both motions. Johnson then moved for a new trial or, in the alternative, for a remittitur, which motion was also denied.

## ANALYSIS

¶ 6 Before we address the merits of Johnson's appeal, we note the appropriate standard of review. Because our resolution of this case turns on the trial court's interpretation of two statutes, we give its decision no deference but review it for correctness. *See Platts v. Parents Helping Parents,* 947 P.2d 658, 661 (Utah 1997).

## I. COMPENSATORY DAMAGES AWARD

¶ 7 The first issue is whether the no-fault insurance statute, Utah Code Ann. § 31A–22–309(1), precluded C.T. from maintaining his action for compensatory damages. That section provides:

ages), the jury apparently concluded that only $339 of them were proximately caused by the accident with Johnson.

(1) A person who has or is required to have direct benefit coverage under a policy which includes personal injury protection may not maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident, except where the person has sustained one or more of the following:

(a) death;

(b) dismemberment;

(c) *permanent disability* or permanent impairment based upon objective findings;

(d) permanent disfigurement; or

(e) *medical expenses to a person in excess of $3,000.*

(Emphasis added.) C.T. alleged that as a result of the accident, he sustained permanent disability and incurred medical expenses that exceeded the $3,000 threshold amount. However, the jury found that he had not suffered permanent disability and that his accident-related medical expenses totaled only $339 (the cost of his emergency room visit).[3]

■ ¶ 8 Although the trial court acknowledged that C.T. had not met any of the threshold requirements of section 31A–22–309(1), it concluded that section 78–18–1(1)(b) created an exception to those requirements. Section 78–18–1 provides in pertinent part:

(a) Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

(b) The *limitations, standards of evidence, and standards of conduct of Subsection (1)(a) do not apply to any claim for punitive damages arising out of the tort-*

*feasor's operation of a motor vehicle while voluntarily intoxicated* ... as prohibited by Section 41–6–44.

Utah Code Ann. § 78–18–1(1)(a), (b) (emphasis added). The court first determined that the emphasized language above expressly gave C.T. the right to maintain an action for punitive damages against Johnson. It then reasoned that the legislature also must have intended section 78–18–1(1)(b) to create an exception to the threshold requirements of section 31A–22–309(1) because otherwise a person could maintain a cause of action against an intoxicated driver for punitive damages but not for compensatory damages.

¶ 9 "When faced with a question of statutory construction, we look first to the plain language of the statute." *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997) (citations omitted). "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995) (citation omitted). Furthermore, "courts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed." *Berrett v. Purser & Edwards,* 876 P.2d 367, 370 (Utah 1994) (citations omitted).

¶ 10 In light of the foregoing principles, we conclude that there is no basis for the trial court's holding. While section 78–8–18(1)(b) provides a specific basis for awarding punitive damages in cases involving a "tortfeasor's operation of a vehicle while voluntarily intoxicated," it makes absolutely no reference to an action for compensatory damages. This section also does not contain any language suggesting that the legislature intended to create an exception to the threshold requirements of section 31A–22–309(1). Accordingly, we hold that because C.T. did

---

**3.** We reject C.T.'s argument that the Personal Injury Payment ("PIP") made by his own insurer establishes the threshold amount for his medical expenses. The mere fact that his PIP insurer paid for medical expenses which the jury found were not related to the accident should not be

binding on Johnson for purposes of establishing the medical expenses threshold and exposing Johnson to liability for general damages. This is especially so since a PIP carrier has a first party contractual relationship with its insured—in this case C.T.—and owes certain duties to him.

not meet any of the threshold requirements of section 31A–2–309(1), it was error to award him compensatory damages.

## II. PUNITIVE DAMAGES AWARD

¶ 11 The second issue is whether C.T. was entitled to an award of punitive damages against Johnson. Johnson argues that because C.T. was not entitled to an award of compensatory damages, section 78–18–1(1)(a) barred any award of punitive damages. We disagree.

¶ 12 The language of section 78–18–1(1)(a) as set forth above is clear and unmistakable. In describing the requirements of subsection (1)(a) that do not apply in DUI cases, subsection (1)(b) uses the terms "limitations, standards of evidence, and standards of conduct." Those terms parallel the requirements for punitive damage awards in subsection (1)(a); namely, (i) an award of compensatory damages, and (ii) proof by clear and convincing evidence that (iii) the tort-feasor's conduct was willful and malicious or intentionally fraudulent or was conduct that manifests a knowing and reckless indifference toward and a disregard of the rights of others. Contrary to the dissent, we think that it is clear from the language of (1)(b) that the legislature intended to waive requirements (i), (ii), and (iii) of subsection (1)(a) in DUI cases. The term "limitations" refers to the requirement of an award of compensatory damages; the term "standards of evidence" refers to the requirement of clear and convincing evidence; and the term "standards of conduct" refers to the requirement of conduct that is "willful and malicious or intentionally fraudulent ... or conduct that manifests a knowing and reckless indifference toward and a disregard of the rights of others." Subsection (1)(b) evidences that the legislature was "cracking down" on intoxicated drivers and determined that this conduct is sufficiently reckless to justify an award of punitive damages.

¶ 13 Nevertheless, Johnson argues that subsection (1)(b) does not mean what it says. He contends that in cases where punitive damages are sought against

an intoxicated driver, the legislature did not intend to abolish the requirements that a party first obtain an award of compensatory damages or prove the requisite standard of conduct provided in subsection (1)(a). He relies on the legislative history of section 78–18–1 and the statements made by Senator Haven Barlow to support his argument.[4] However, it is elementary that we do not seek guidance from legislative history and relevant policy considerations when the statute is clear and unambiguous. *See Carlie v. Morgan,* 922 P.2d 1, 4 (Utah 1996). Rather, " '[w]e must be guided by the law as it is. . . . When *language is clear and unambiguous,* it must be held to mean what it expresses, and *no room is left for construction.*' " *Salt Lake Child & Family Therapy Clinic v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (emphasis added) (quoting *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 379–80 (1921)); *see also Nelson,* 905 P.2d at 875. Thus both the legislative history and statements made by Senator Barlow must yield to the clear and unmistakable language of the statute. Consequently, we hold that in cases seeking punitive damages against an intoxicated driver, the plain language of section 78–18–1(1)(b) eliminates the following requirements: (1) that compensatory or general damages be awarded first, and (2) that the plaintiff prove by clear and convincing evidence that the tortfeasor's conduct rises to the standards set forth in subsection (1)(a).

¶ 14 Nevertheless, we do not believe it was the legislature's intent that punitive damages be awarded without any limitation or restraint. The plaintiff must still prove that he or she *sustained* compensatory or general damages although such damages are not *awardable* due to the limitations of the no-fault insurance statutory scheme. The Texas Supreme Court employed this same reasoning in *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934), *overruled in part by Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712 (Tex.1987). In *Fort Worth Elevators,* the surviving wife and children of a deceased employee brought suit against the employer for exemplary damages. The court noted the rule in Texas that

---

4. The dissent apparently adopts this view also.

exemplary damages cannot be recovered un-less the plaintiff is shown to have sustained actual loss or injury. The court held that even though the plaintiffs could not recover actual damages because the employee's death was covered by workers' compensation, the plaintiffs could recover exemplary damages if they could show that they had sustained actual loss or injury.[5] We agree with this approach.

¶ 15 In the instant case, the jury found that C.T. had sustained $10,339 in compensatory damages. Although we have held herein that those damages are not awardable to C.T. because of the restrictions in our no-fault insurance statutes, that finding by the jury entitled C.T. to an award of punitive damages. By requiring that compensatory damages be *sustained* before punitive damages may be awarded, we assure that punitive damages cannot be recovered where the plaintiff did not sustain any monetary loss or injury, and further assure that the amount of punitive damages awarded will be in accordance with our decision in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991), as hereinafter discussed.

 ¶ 16 Johnson next contends that due process prohibits an award of punitive damages based on a finding that the tortfeasor was operating a vehicle while under the influence of alcohol or drugs. As noted above, the legislature determined that the conduct of driving while intoxicated justifies an award of punitive damages if compensatory damages are sustained. The legislature also concluded that punitive damage awards were a rational and reasonable method of deterring people from driving under the influence of alcohol and drugs. Moreover, it is difficult to

see how the imposition of punitive damages on intoxicated drivers can violate due process when it is well established that criminal sanctions and penalties may be imposed for the same conduct.[6] *See* Utah Code Ann. § 41–6–44; *State v. Brennan*, 13 Utah 2d 195, 371 P.2d 27 (1962) (holding that criminal penalties for DUI are constitutional). Accordingly, we reject Johnson's due process argument.

 ¶ 17 Finally, Johnson argues that the trial court's instructions to the jury on the issue of punitive damages were inadequate. The court apparently gave the jury two new instructions at the close of the second phase of trial which addressed the issue of punitive damages. Johnson maintains:

> The jury was merely instructed that punitive damages could be awarded when it has been established that [C.T.'s] claim arose out of Johnson's operation of a motor vehicle while voluntarily intoxicated. The jury was [also] informed that punitive damages are proper if they would be a reasonable punishment to Johnson and a "wholesome warning to others." [7]

Johnson does not actually contend that the jury's award of $25,000 in punitive damages was excessive. Rather, he argues that the award was improper because the foregoing instructions failed to comply with our decision in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991). In that case, we stated that the jury must consider the following factors in assessing the amount of punitive damages to be awarded:

(i) the relative wealth of the defendant;
(ii) the nature of the alleged misconduct;
(iii) the facts and circumstances surround-

---

5. The *Wright* court overruled only the *Fort Worth Elevators* court's statement "that a plaintiff *must* secure a jury finding as to the *amount* of actual damages in a wrongful death case arising *under [the Texas Workers' Compensation Act]*." 725 S.W.2d at 714 (emphasis added). *Wright* still requires that actual damages be sustained.

6. We also voice our disagreement with Johnson's characterization of intoxicated driving as mere negligence. Every jurisdiction in the country recognizes that this conduct is a criminal offense. Furthermore, as one court has noted, "[a] majority of the states ... support the view that driving while intoxicated is in and of itself sufficiently

reckless or wanton to warrant punitive damages." *Hawkinson v. Geyer*, 352 N.W.2d 784, 788 (Minn.App.1984) (citing *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages*, 65 A.L.R.3d 656 (1975)).

7. We note that we have been unable to verify the accuracy of Johnson's summary of the court's punitive damages instructions because the record on appeal does not contain the actual instructions. However, since C.T. has not disputed the accuracy of these summaries, we proceed on the assumption that they accurately paraphrase the actual instructions given by the court.

ing such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.

*Id.* at 808 (citations omitted).

¶ 18 While we agree that the court erred in failing to specifically instruct the jury on the above factors, that failure was harmless error under the circumstances of this case. "Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings." *Jones v. Cyprus Plateau Min. Corp.*, 944 P.2d 357, 360 (Utah 1997) (citation omitted). After reviewing all of the jury instructions, the evidence, and the closing arguments, we conclude that it is highly probable that the jury considered each of the relevant *Crookston* factors during its deliberations even though not specifically instructed to do so.

¶ 19 First, the evidence presented at the second phase of the trial primarily focused on the first *Crookston* factor, Johnson's relative wealth. Johnson testified that his net income every two weeks was only $600 and that he did not own any assets aside from his work-provided retirement plan. In addition, during deliberations the jury submitted a series of questions to the judge relating to Johnson's wealth and ability to pay a punitive damage award. Although the court did not respond to the questions because they were inappropriate, the questions nevertheless demonstrate that the jury considered this factor during deliberations.

¶ 20 Second, the court specifically instructed the jury to consider the nature of Johnson's misconduct, the second *Crookston* factor. As stated above, the court instructed the jury that "punitive damages could be awarded when it has been established that [C.T.'s] claim arose out of Johnson's operation of a motor vehicle while voluntarily intoxicated." In light of our holding above, this instruction correctly stated the law. The jury had earlier found that C.T. had sustained $10,339 in compensatory damages. Therefore, punitive damages may be awarded under section 78–18–1(1)(b) on a finding that the plaintiff's cause of action arose from the defendant's operation of a motor vehicle while legally intoxicated. Thus the court *did* instruct the jury on the second *Crookston* factor.

¶ 21 Third, the court also instructed the jury to consider the third *Crookston* factor: the facts and circumstances surrounding the misconduct. As stated above, the court instructed the jury to consider Johnson's actions, i.e., his operation of a motor vehicle while legally intoxicated. Moreover, at the second phase of trial, Johnson stipulated that he "was driving under the influence of alcohol, and that he subsequently entered a plea [of] guilty [to] an intoxication level of .08, which is the requirement for a DUI conviction." Johnson's own counsel also admitted during closing arguments that his client had no excuse for his conduct and was fortunate that C.T.'s injuries were not more severe. On the basis of the foregoing, the jury likely considered the third *Crookston* factor during its deliberations.

¶ 22 Fourth, the record demonstrates that the court instructed the jury to consider the effect of Johnson's misconduct on the life of C.T. and others, the fourth *Crookston* factor. As stated above, the court apparently gave the jury two new instructions, which went to the issue of punitive damages. In addition, the court informed the jury that it was still governed by all of the instructions that were given during the first phase of trial. Also, a copy of those instructions was sent into the jury room during deliberations on the punitive damages issue. One of those instructions, number 16, provided in part:

[Y]ou may consider any pain, discomfort, and suffering, both mental and physical, its probable duration and severity, and the extent to which the plaintiff has been prevented from pursuing the ordinary affairs of life as previously enjoyed. You may also consider whether any of the above will, with reasonable certainty, continue in the future.

Thus, even though this instruction was given on the issue of compensatory damages, it also addressed the fourth *Crookston* factor.

¶ 23 The court also instructed the jury to consider the probability of future recurrence of the misconduct, the fifth *Crookston* factor. As stated above, the court instructed the jury that "punitive damages are proper if they would be a reasonable punishment to Johnson and a 'wholesome warning to others.'" In addition to this instruction, the parties presented evidence and argument to the jury on this point. Johnson testified that he has not had any subsequent DUI convictions. His counsel likewise argued to the jury that it was unlikely that the award of punitive damages would serve as a deterrent to others and that Johnson had already learned his lesson. C.T.'s counsel asserted, on the other hand, that the jury should take advantage of its opportunity to make a statement and prevent future alcohol-related accidents. Thus, the jury was instructed to consider—and likely did consider—this factor during its deliberations.

¶ 24 In addition, the jury was well aware of the parties' relationship, the sixth *Crookston* factor, and necessarily considered this in imposing punitive damages. The fact that Johnson was an intoxicated driver and caused injury to C.T. was the very basis of the punitive damage award.

¶ 25 Finally, the jury considered the seventh *Crookston* factor, i.e., the amount of compensatory damages sustained. The award of $25,000 in punitive damages is well within the 3 to 1 ratio approved in *Crookston.* Indeed, Johnson does not contend that the amount of punitive damages are excessive.

¶ 26 Based on the foregoing, we conclude that the court's failure to specifically instruct the jury on all of the relevant *Crookston* factors does not amount to reversible error. Hence, we affirm the award of punitive damages in this case.

## CONCLUSION

¶ 27 We hold that the compensatory damages award was erroneous because C.T. did not meet the threshold requirements of section 31A–22–309(1). However, we also hold that section 78–18–1(1)(b) expressly allows C.T. to maintain an action against Johnson for punitive damages where he sustained compensatory damages even though he was not entitled to an award of compensatory damages and where he proved that Johnson operated a motor vehicle while voluntarily intoxicated at the time of the accident. Finally, the court's failure to fully instruct the jury on the issue of punitive damages was harmless error under the circumstances of this case.

¶ 28 Reversed in part and affirmed in part.

¶ 29 Associate Chief Justice DURHAM and Justice STEWART concur in Chief Justice HOWE's opinion.

ZIMMERMAN, Justice, dissenting:

¶ 30 I agree with the majority's holding that section 78–18–1(1) of the Code does not create an exception for section 31A–22–309(1)'s threshold requirement. However, I disagree with the majority as to the punitive damages award.

¶ 31 Contrary to what the majority states, the language of section 78–18–1(1)(b) is not "clear and unmistakable," especially given the extraordinary result the majority's reading of that section produces. Section 78–18–1 provides in pertinent part:

(1) (a) Except as otherwise provided by statute, punitive damages may be awarded only if [i] compensatory or general damages are awarded *and* [ii] it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

(b) *The limitations, standards of evidence, and standards of conduct of Subsection (1)(a) do not apply to any claim for punitive damages arising out of the tortfeasor's operation of a motor vehicle while voluntarily intoxicated* or under the influence of any drug or combination of alcohol and drugs as prohibited by Section 41–6–44.

Utah Code Ann. § 78–18–1(1)(a), (b) (brackets and emphasis added). Subsection (1)(b) of section 78–18–1 does clearly state that the

limitations, standards of evidence, and standards of conduct found in subsection (1)(a) do not apply to punitive damages claims arising out of a driver's operation of a motor vehicle while intoxicated. However, subsection (1)(b) does not provide any guidance as to what the terms, "limitations, standards of evidence, and standards of conduct," mean. Specifically, it is unclear whether the legislature intended subpart (1)(b) to exempt only the (1)(a)[ii] requirements—an interpretation that would preserve the fundamental common law requirement that a plaintiff be awarded general or compensatory damages before punitive damages can be awarded, freeing the plaintiff from the heightened requirements of subpart 1(a)[ii]—or whether the legislature intended subpart (1)(b) to exempt the plaintiff from both the (1)(a)[i] and (1)(a)[ii] requirements—an interpretation that would constitute a fundamental break with our established punitive damage law and only require a plaintiff seeking punitive damages to establish by a preponderance of the evidence that he was injured (but may have suffered no compensable damages) by a defendant who was operating a motor vehicle while voluntarily intoxicated. The fact that the statute can be read in both ways renders subsection 78–18–1(1) ambiguous. When confronted with an ambiguous statute, we "then seek guidance from the legislative history and relevant policy considerations." *V-1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 917 (Utah 1997) (citing *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994)).

¶ 32 Having found the statute to be unclear, I would then employ the review we regularly use when confronted with an ambiguous statute. First, I would look to its historical and legal context. The legislature enacted section 78–18–1 in 1989 to address for the first time in statutory form Utah's law regarding punitive damages. Prior to its enactment, punitive damages law in Utah was entirely a matter of common law. *Cf. Wilson v. Oldroyd*, 1 Utah 2d 362, 267 P.2d 759, 765 (1954). For the most part, section 78–18–1 codified existing case law. *See* Kia Hodgson, Development, *Punitive Damages Act*, 1990 Utah L.Rev. 269, 272. The statute did, however, make punitive damages less readily available than may have been the case under our then-recent decisions. First, the statute made it plain that "recklessness," which this court had ambiguously referred to in *Behrens v. Raleigh Hills Hospital, Inc.*, 675 P.2d 1179, 1186–87 (Utah 1983), was insufficient to support imposition of punitive damages. *See* Utah Code Ann. § 78–18–1(1)(a). Second, the statute raised the burden of proof from a preponderance of the evidence to clear and convincing. *See id.* Finally, the statute codified the preexisting common law rule that punitive damages could not be awarded unless general damages first had been awarded, a position upon which our common law had always been consistent.

¶ 33 The legislature chose, in enacting this statute, not to apply these standards to cases involving DUI. *See id.* § 78–18–1(1)(b). This does not mean, however, as the majority reasons, that no standards apply for awarding punitive damages in DUI cases. It must be remembered that only the burden of proof and the language on state of mind in the statute were arguable departures from our common law. The requirement of an award of actual damages was not. "[I]t is not to be presumed that the legislature intended to abrogate ... a rule of the common law by enactment of a statute upon the same subject.... The fact that a statute contains a partial codification of a particular rule or principle of the common law does not necessarily abrogate the remainder of the common law...." 73 Am.Jur.2d *Statutes* § 185 (1974). Section 78–18–1 evinces no intent to occupy the entire field of punitive damages. While it codified and in some respects made stricter then-existing common law principles in cases where subsection (a) applies, principles of statutory interpretation suggest that the language of subsection (b) should be read as leaving in place the then-existing common law standards for awarding punitive damages in DUI cases.

¶ 34 Further support for this conclusion is found in the legislative history of section 78–18–1. The comments of Senator Barlow, the sponsor of the amendment to section 78–18–1 and a long-time critic of what he saw as this court's erosion of the common law limita-

tions on punitive damages, indicate that subsection (1)(a) was intended generally to strengthen the threshold requirements for awarding punitive damages, while subsection (1)(b) was intended to leave unmodified the existing case law for punitive damages claims arising from the operation of a motor vehicle while voluntarily intoxicated. Regarding subsection (1)(a), Senator Barlow expressed concern that some recent decisions of this court had permitted punitive damages to be too readily awarded. Floor Debate, Statement of Sen. Haven J. Barlow, 48th Utah Leg., Morning Sess. (Feb. 1, 1989) (Senate Recording No. 43). However, as to subsection (1)(b), Senator Barlow stated:

> [W]hat we're doing with this bill is about three things, maybe four things, keep this in mind: Restoring the standard back to where we were [prior to *Terry v. Zions Co-op. Mercantile Inst.*, 605 P.2d 314 (Utah 1979) ], with the exception that *with drugs and intoxication we will not make any changes there.* So if anybody is being sued as a result of ... reckless behavior where there's drugs and alcohol involved, they will have to use the lower [pre-existing] standards. So the higher standards will be in all cases with the exception of drunken driving or drug related behavior as far as driving is concerned.

*Id.* (emphasis added). Thus, the legislative history indicates that section 78–18–1 was intended to elevate the standards for punitive damage claims in general but to keep the then-current common law standards in place for claims arising out of DUI infractions. This history accords with reading the exclusion in subpart 1(b) as applying *only* to the new punitive damage requirements, not the old and settled requirement of an award of actual damages.

¶ 35 Construing the statute in this light, I would next look to the common law standards to determine if the punitive damages award before us was in error under the pre–1989 punitive damage case law. There are two basic common law requirements for awarding punitive damages that C.T. did not satisfy. First, compensatory damages must be awarded. *See Graham v. Street*, 2 Utah 2d 144, 270 P.2d 456, 459 (1954). Second, the

plaintiff had to show that the defendant's mental state was of greater culpability than simple negligence. *See Johnson v. Rogers*, 763 P.2d 771, 775–76 (Utah 1988). Therefore, under our pre–1989 case law, the plaintiff would be unable to receive punitive damages. The majority ignores that law.

¶ 36 As to the first common law requirement, the majority upholds the punitive damage award even though C.T. failed to obtain an award of compensatory damages. Although C.T. established that he suffered $10,000 in general damages and $339 in special damages, under the substantive law governing C.T.'s action, he failed to prove a tort giving rise to compensatory damages.

¶ 37 By upholding an award of punitive damages where no actual damages were awarded, the majority brings itself into conflict with another facet of our case law. In *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991), we stated that "the amount of a punitive damage award generally must bear a 'reasonable and rational' relationship to the actual damages." *Id.* at 810 (citation omitted). Specifically, we noted that in cases where the actual damages awarded were less than $100,000, "punitive damage awards beyond a 3 to 1 ratio to actual damages have seldom been upheld." *Id.* We later reiterated that "an award exceeding [this ratio] raises a presumption that the award is excessive and that a failure by the trial court to reduce the award or order a new trial is an abuse of discretion.... To overcome this presumption, the trial court must explain why the case is unique, usually in terms of one of the established seven factors or 'some other factor that seems compelling.'" *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 939 (Utah 1993) (quoting *Crookston*, 817 P.2d at 811). Our prior emphasis on the ratio of actual to punitive damages becomes meaningless if we permit a plaintiff to recover punitives without having recovered actuals. Neither the majority nor our past cases provide any guidance to the bench or bar in such a situation. Without an actual damage award with which to compare a punitive damage award and without any other guidance from this court, a punitive award can never be determined to be excessive.

This raises serious federal due process questions, questions which *Crookston* had obviated. *See* 817 P.2d at 808–11.

¶ 38 In response to this objection, the majority has come up with the unique notion that even though the plaintiff is barred from maintaining a cause of action for general damages under section 31A–22–309(1) of the Code, the trial court can send the case to the jury to determine, in a sort of mock trial, a fictitious general damages amount determined solely to support the only real recoverable damages—punitive. This fiction is an odd one, at best. The majority seizes upon this device to rescue its otherwise untenable result. But in doing so, it has introduced an unprecedented and unpredictable artifice into Utah law. One that may have unpredictable collateral consequences elsewhere in the law where actual damages are not recoverable.

¶ 39 Second, as with the pre–1989 common law mental state requirement, the majority upholds the punitive damage award even though C.T. failed to adduce any evidence tending to show that Johnson possessed the state of mind necessary for the imposition of punitive damages. In *Crookston*, we stated that under the common law, a punitive damage award is only appropriate if there is evidence to support "a lawful jury finding of defendant's requisite mental state." 817 P.2d at 807. The common law in place when the legislature passed 78–18–1 requires C.T. to prove that Johnson's conduct was "malicious" or "in reckless disregard for the rights of others, although actual intent to cause injury is not necessary." *Behrens,* 675 P.2d at 1186–87. In other words, "[s]imple negligence will never suffice as a basis upon which such damages may be awarded. 'Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.'" *Id.* (quoting Restatement (Second) of Torts, § 908 cmt. b, (1979)). Yet the majority guts this requirement with its reading of the statute.

¶ 40 The majority attempts to avoid the criticism that its naive reading of the statute will permit punitives for conduct that is only negligent by stating baldly that driving under the influence of alcohol amounts to reckless or wilful misconduct. Whatever the majority's personal views of driving under the influence, under Utah case law that conduct alone is mere negligence. In *Johnson v. Rogers,* 763 P.2d 771 (Utah 1988), we addressed this very question and stated, "the mere allegation or fact of having caused an accident or injury after drinking and driving will not support an award of punitive damages. The standard is fact-specific and requires proof of conduct which is knowingly reckless and exhibits a high degree of disregard for the safety of others." *Id.* at 776; *see also Biswell v. Duncan,* 742 P.2d 80, 84 (Utah Ct.App.1987). In this case, the only evidence introduced at trial was that Johnson had been convicted of driving under the influence and had collided with C.T.'s vehicle after crossing into the lanes of travel for oncoming traffic. Such evidence, alone, is insufficient to satisfy *Johnson v. Rogers* and the cases upon which it relied.

¶ 41 In *Dixon v. Stewart,* 658 P.2d 591 (Utah 1982), we held that "criminal culpability generally constitutes only evidence of negligence in a civil action, rather than negligence per se as a matter of law." *Id.* at 600–01; *see also Intermountain Farmers Ass'n v. Fitzgerald,* 574 P.2d 1162, 1164 (Utah 1978) ("This Court has long held that the violation of a statute does not necessarily constitute negligence per se and may be considered only as evidence of negligence ...."). In *Dixon,* the defendant pled guilty to negligent homicide after she struck and killed a pedestrian while driving under the influence of alcohol. In the subsequent civil case the plaintiff moved to admit the guilty plea as a statement against interest, but the trial court excluded the guilty plea. On appeal, we determined that the trial court should have admitted the guilty plea. *See* 658 P.2d at 600. However, we recognized the limited treatment the guilty plea should be given—it is only evidence of the defendant's state of mind, not proof that the defendant acted maliciously, recklessly, or even negligently. *See id.* That rule would prevent the evidence of Johnson's DUI conviction from satisfying the standard of culpability required by our case law.

¶42 In sum, in reaching its preferred result, the majority has jettisoned normal rules of statutory construction, ignored our prior precedent, and raised potentially serious due process questions about the excessiveness of punitive damage awards. Today's reading of this ambiguous statute, a reading that is fundamentally at odds with the legislature's purpose in enacting the statute, and a reading that blithely ignores our case law and which fundamentally reshapes Utah's DUI and punitive damage law, can only be explained by the fact that alcohol is involved. Whatever the evils of drunk driving—and they are many—such a fundamental change in Utah's law of punitive damages should be left to explicit action of the legislature. The present statute is most emphatically not such an act.

¶43 Justice RUSSON concurs in Justice ZIMMERMAN's dissenting opinion.