2002 UT App 343

**STATE of Utah, in the interest of B.S.V., a person under eighteen years of age.**

**B.S.V., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20010890–CA.**

Court of Appeals of Utah.

Oct. 18, 2002.

J. Bryan Jackson, Cedar City, for Appellant.

Scott Garrett, Cedar City Attorney's Office, and Troy Little, Iron County Attorney, Cedar City, for Appellee.

Before Judges BILLINGS, BENCH, and DAVIS.

OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 B.S.V. appeals his conviction of providing shelter to a runaway. *See* Utah Code Ann. § 62A–4a–501 (2000). We reverse.

BACKGROUND

¶ 2 "We recite the facts in a light most favorable to the decision of the fact finder." *In re J.F.S.*, 803 P.2d 1254, 1254 (Utah Ct. App.1990). According to the testimony presented before the juvenile court,[1] B.S.V. was with some friends at the T.A. Truck Stop in Parowan, Utah, in the early morning of June 3, 2001. Two runaway girls, Jamie and

1. There are no written findings in this case.

Angela, were getting gas at the truck stop around 2 a.m. They began talking with B.S.V. and his friends. At the invitation of some of B.S.V.'s friends, the girls agreed to accompany them to the mountains. The girls, in a Suburban,[2] followed a truck belonging to one of the boys. Two of the boys rode with the girls. They went to Yankee Meadow Reservoir, arriving around 3 a.m. Once there, they made a campfire and, according to Jamie, the group "just sat out and were talking and laughing" and drinking alcohol. None of them had any tents or sleeping gear. Around 6 a.m. that morning, the girls informed the boys that they were runaways. One boy, not B.S.V., hid the Suburban in the woods. The boys and girls all drove in the truck back to town, where they dropped off B.S.V. at his house.

¶ 3 B.S.V. slept all day until around 5 p.m. At that time, B.S.V.'s brother woke him up and asked if he wanted to go camping with him and some other friends. B.S.V. agreed, found his sleeping bag, and was picked up by his friends. On the way to their usual campsite, the group stopped at a bachelor party and picked up another friend. They arrived at the campsite around 9 p.m. and started a campfire. Again, they did not have any tents.

¶ 4 Later that night, more of B.S.V.'s friends left the bachelor party and arrived at the campsite. While Jamie arrived with this group, Angela remained at the bachelor party and did not arrive until early in the morning. Jamie first went to sleep in another boy's sleeping bag. B.S.V. went to sleep in his sleeping bag around 4 or 5 a.m., and then got up and sat by the fire. Jamie also woke up and then slept for a little while in B.S.V.'s sleeping bag. Around 6 a.m., B.S.V. left with the same group he arrived with and went home. The girls returned to town with the others later that morning, and the police apprehended the girls that afternoon.

¶ 5 The juvenile court, in its oral findings, found B.S.V. knew the girls were runaways. It also found B.S.V. "did in fact intentionally and knowingly harbor the minors in that he did go to the mountains with them. He knew that they were being transported to and from the vehicle by others." The court

also found relevant the testimony that the group was drinking alcohol the first night, and stated, "I think even on the second night some of them had been to a bachelor party and came drunk. In fact, I think [B.S.V.] even admitted that." In addition, the court found "that at least Jamie did in fact end up in his sleeping bag, by her testimony. That's unrebutted. Providing or allowing someone to sleep in your sleeping bag in the mountains knowing that they're runaways in this Court's mind is an intentional and knowing act." The juvenile court found B.S.V. guilty beyond a reasonable doubt. B.S.V. now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 B.S.V. argues the evidence is insufficient to support his conviction under Utah Code Ann. § 62A–4a–501 (2000), specifically because he did not "harbor" the runaways. Therefore, at issue is the statute's use of the term "harbor." When dealing with issues of statutory interpretation, we give the juvenile court's decision no deference and review it for correctness. See C.T. ex rel Taylor v. Johnson, 1999 UT 35, ¶ 6, 977 P.2d 479; In re D.B., 925 P.2d 178, 180 (Utah Ct.App.1996).

¶ 7 Furthermore, "[w]hen reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination." In re V.T., 2000 UT App 189, ¶ 8, 5 P.3d 1234. We will reverse a juvenile court's decision "only when it is 'against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.' " Id. (quoting State v. Walker, 743 P.2d 191, 193 (Utah 1987)).

## ANALYSIS

¶ 8 B.S.V. argues the juvenile court erred in finding he harbored the runaways. At issue is the meaning of the term "harbor" in Utah Code Ann. § 62A–4a–501. The statute reads in pertinent part:

---

2. The girls had stolen the Suburban from their foster parents.

62A–4a–501. Providing shelter to a runaway—Reporting requirements—Division to provide assistance—Penalty.

(1) Any person who knowingly and intentionally harbors a minor and who knows at the time of harboring the minor that the minor is away from the parent's or legal guardian's home, or other lawfully prescribed residence, without the permission of the parent or legal guardian, shall promptly notify the parent or legal guardian of the minor's location or report the location of the minor to the division. The report may be made by telephone or any other reasonable means.

(2) Unless the context clearly requires otherwise:

(a) "Promptly" means within eight hours after the person has knowledge that the minor is away from home without parental permission.

(b) "Shelter" means the person's home or any structure over which the person has any control.

. . . .

(5) Any person who knowingly and intentionally harbors a minor and who knows at the time of harboring the minor that the minor is away from the parent's or legal guardian's home, or other lawfully prescribed residence, without the permission of the parent or guardian and without making the notification required by this section is guilty of a class B misdemeanor.

*Id.*

¶ 9 B.S.V. argues he "did not [']harbor['] in the common expressed use of the term." To interpret the term "harbor," we must first examine the plain language of the statute. *See C.T. ex rel. Taylor v. Johnson,* 1999 UT 35,¶ 9, 977 P.2d 479. " 'We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning.' " *Id.* (quoting *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995)); *see also* Utah Code Ann. § 68–3–11 (2000) ("Words . . . are to be construed according to the context and approved usage of the language. . . ."). "In the case of unambiguous statutes, this court has a long history of relying on dictionary definitions to determine plain meaning." *State v. Redd,* 1999 UT 108,¶ 11, 992 P.2d 986; *see, e.g., Salt Lake City v. Roberts,* 2002 UT 30,¶ 29, 44 P.3d 767; *In re V.T.,* 2000 UT App 189 at ¶ 10, 5 P.3d 1234; *In re D.B.,* 925 P.2d at 181.

■ ¶ 10 The definitions of the transitive verb form of "harbor" are (1) "to give shelter or refuge to: take in," and (2) "to receive clandestinely and conceal (a fugitive from justice)." Webster's Third New World International Dictionary 1031 (1986). We conclude the first dictionary definition of "harbor" is more appropriate as it allows us to give meaning to all of the statute's provisions. Specifically, since "shelter" is defined in the statute, *see* Utah Code Ann. § 62A–4a–501(2)(b), we conclude the legislature intended to equate the act of "harboring" with giving "shelter."

¶ 11 Under the relevant definition of "harbor," B.S.V. would have had to "give shelter or refuge to" the runaways. Webster's Third New World International Dictionary 1031 (1986). There is support for defining "harbor" in this manner in other jurisdictions. For example, in a similar case involving harboring a runaway, a Texas court stated, "[t]he word 'harbor' has universally accepted meanings. Its most commonly recognized meanings as a verb are 'to give shelter to' and 'to give refuge to' someone." *Urbanski v. State,* 993 S.W.2d 789, 793 (Tex. App.1999) (citing several dictionaries); *see also United States v. Lopez,* 521 F.2d 437, 441 (2d Cir.1975) ("Although 'harbor' has been defined to have several meanings, including 'to receive clandestinely and conceal,' its primary meaning is 'to give shelter or refuge to, . . . .' ") (Citations omitted.).

■ ¶ 12 While the juvenile court found that "[p]roviding or allowing someone to sleep in your sleeping bag in the mountains knowing that they're runaways in this Court's mind is an intentional and knowing act," this finding alone is insufficient to establish that B.S.V. gave shelter or refuge to the runaways. Because section 62A–4a–501 defines "shelter" as "the person's home or any structure over which the person has any control," Utah Code Ann. § 62A–4a–501(2)(b), we cannot say that allowing a runaway to sleep in one's sleeping bag for several hours at an open campsite in the mountains with others present meets the statutory defi-

nition of "shelter." *Cf. Urbanski*, 993 S.W.2d at 793–94 (concluding defendant harbored the runaway in part because he arranged for both of them to stay at his friend's house overnight).

¶ 13 When B.S.V. went to sleep Saturday night at 4 or 5 a.m., Jamie was already asleep in another boy's sleeping bag. It was only after both Jamie and B.S.V. woke up that Jamie then went to sleep again near the fire in B.S.V.'s sleeping bag. Because B.S.V. left at 6 a.m., Jamie only briefly used B.S.V.'s sleeping bag.

¶ 14 Moreover, B.S.V. did not accompany the runaways to the mountains on the night he was convicted of harboring them. Rather, he was already at a campsite where the runaways later arrived. The record further indicates B.S.V. and the runaways did not even have plans to meet that night, because B.S.V. decided to go camping only when his brother woke him up late Saturday afternoon and invited him. *Cf. Urbanski*, 993 S.W.2d at 793 (explaining defendant harbored the runaway in part because he made arrangements with her before she ran away and picked her up after she sneaked out of her parents' home).

¶ 15 Therefore, the evidence, in the light most favorable to the juvenile court's decision, shows only that B.S.V. was present at the campsite where the runaways later arrived, without having had plans to meet them there, and that one runaway briefly used his sleeping bag early in the morning. We conclude this evidence is insufficient to constitute "harboring" because B.S.V. did not give shelter or refuge to the runaways.

¶ 16 We therefore reverse B.S.V.'s conviction for providing shelter to a runaway.

¶ 17 WE CONCUR: RUSSELL W. BENCH, and JAMES Z. DAVIS, Judges.