2010 UT App 387

STATE of Utah, Plaintiff and Appellee,

v.

Kenneth Anthony LEBER, Defendant and Appellant.

No. 20060613–CA.

Court of Appeals of Utah.

Dec. 30, 2010.

Troy L. Booher and Katherine Carreau, Salt Lake City, for Appellant.

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

## AMENDED OPINION [1]

McHUGH, Associate Presiding Judge:

¶ 1 This case is before us on remand from the Utah Supreme Court for a determination of whether the erroneous introduction of evidence during defendant Kenneth Anthony Leber's trial on charges of second degree felony child abuse, see Utah Code Ann. § 76–

5–109 (2008),[2] based on an incident involving his sixteen-year-old son (Son), was harmless. See State v. Leber (Leber II), 2009 UT 59, ¶ 25, 216 P.3d 964. We conclude the error was not harmless and reverse and remand for a new trial.

## BACKGROUND

¶ 2 On January 28, 2006, Son admitted to having "[q]uite a bit" to drink and refusing to stop playing his guitar when asked by Leber because Son intended to "create a problem." A verbal argument ensued. Son originally decided to leave but reentered the house to continue the argument. Son testified that when he picked up his guitar to resume playing, Leber pushed him into a stove; threw him into a mirror, cutting his lip; and then dragged him to the restroom to wash his face. According to Son, as the verbal argument escalated, Leber dragged him from the restroom by the arm and put Son in a headlock, choking him until he lost consciousness. Son woke up in the hallway with a puddle of blood near his mouth, left the house, and lay in front of a convenience store until an ambulance arrived.

¶ 3 According to Leber, Son was the first aggressor in their physical altercation and Leber was merely defending himself. Leber testified that Son had been drinking and that when Leber unplugged the guitar's amplifier, Son hit him in the chest and "shoved [him] into the mirror." Leber stated that he spun Son around and both of them hit the mirror, after which a "wrestling match" ensued. Leber admits to putting Son in a headlock and asking Son if he had "had enough" but claims he released Son when Son indicated that he had. When Son then spit blood on the floor in the hallway, Leber told Son to clean up in the restroom. Leber testified that Son continued the verbal argument and that Leber "grabbed [Son's] arm[,] ... twisted [it] behind him[,] and escorted him down the hallway and out the front door." Leber testified that he yelled at Son to go home to his

---

1. This Amended Opinion replaces the Opinion in Case No. 20060613–CA issued on November 12, 2010.

2. Because the substantive provisions of the code at issue on this appeal have not changed, we cite to the current version of the code as a convenience to the reader.

mother's house. Leber denies that Son ever lost consciousness.

¶ 4 The trial court determined that the defense had "opened the door" to evidence of Leber's character under rule 404(a) of the Utah Rules of Evidence by referring to Son's violent character. Based on this conclusion, the trial court permitted Leber to be cross-examined about a prior instance of child abuse against Son ten years earlier;[3] an assault in Alaska in 2003; and a domestic violence incident in Colorado involving Son's mother, Leber's former wife (Former Wife).

¶ 5 In addition to Leber and Son, two police officers, a neighbor, the physician that treated Son, and Former Wife testified at trial. The neighbor testified that he heard someone yelling, "Stop hittin' me!" and, "You're hurtin' me!" the night of the incident and that he saw two people but could not identify who was yelling. Neither Son nor Leber corroborated this testimony. Son was not asked about it at trial, and Leber denied that either he or Son yelled the statements heard by the neighbor. One of the police officers and the treating physician testified about the marks they observed on Son's body, including bleeding from the mouth, a swollen eye, finger marks on his neck, and scratches and abrasions on his face and back. While Leber contends that he had a bruise on his chest, the police officers testified that they observed no visible marks on Leber but admitted that they did not examine him closely. The officers also testified about statements made by Son and Leber soon after the incident. During their interview with Leber, the officers observed a mirror broken in two places, as well as blood in the hallway and in the bathroom sink.

¶ 6 Finally, Former Wife testified that Leber had engaged in domestic violence against her "too many" times to count, that Leber abused his children "several" times, and that it was her opinion that he is violent with children. Former Wife also opined that Son is violent. Based on this evidence, the jury found Leber guilty of second degree child abuse. The trial court sentenced him to one to fifteen years in prison.

¶ 7 On appeal before this court, Leber argued that the trial court erred in allowing the introduction of both opinion evidence of Leber's violent character and specific acts of his conduct when it ruled that Leber "opened the door" by putting at issue Son's character for violence under rule 404(a) of the Utah Rules of Evidence. See State v. Leber (Leber I ), 2007 UT App 273, ¶ 10, 167 P.3d 1091, rev'd, Leber II, 2009 UT 59, 216 P.3d 964. Leber claimed that the evidence could not be admitted under rule 404(a) without also conducting an inquiry under rule 404(b) of the Utah Rules of Evidence. See Leber I, 2007 UT App 273, ¶ 10, 167 P.3d 1091. See generally Utah R. Evid. 404(a)–(b) (discussing the admission of character and other acts evidence). We affirmed the trial court's decision, concluding that no such inquiry was required and that Leber had not raised the issue of whether the evidence was properly admitted under rule 404(a), irrespective of the requirements of rule 404(b). See Leber I, 2007 UT App 273, ¶¶ 8–12, 167 P.3d 1091.

¶ 8 The Utah Supreme Court granted certiorari and reversed this court's decision, holding that the evidence was erroneously admitted because Leber did not "open the door" to the evidence under rule 404(a) in the first instance. See Leber II, 2009 UT 59, ¶ 12, 216 P.3d 964. The supreme court remanded the case to this court to determine whether the erroneous introduction of evidence was harmless. See id. ¶ 25. Because we conclude that the error was not harmless, we reverse and remand for a new trial.

ISSUES AND STANDARD OF REVIEW

¶ 9 On remand from the supreme court, we must determine whether the erroneous introduction of the following evidence was harmless: (1) Leber's 1996 conviction for child abuse against Son when Son was six years old, (2) a 2003 assault Leber committed in Alaska, (3) an incident of domestic violence against Former Wife, (4) testimony that Leber engaged in domestic violence "too many" times to count, (5) testimony that Leber had abused his children "several" times, and (6) Former Wife's opinion that Leber is violent with children.

---

3. Leber testified that he was sentenced without a     trial and without pleading to the charge.

¶ 10 "Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings." *C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 18, 977 P.2d 479 (internal quotation marks omitted). Reversal is warranted where the absence of errors "may well have resulted in a different jury determination." *See S.H. ex rel. Robinson v. Bistryski*, 923 P.2d 1376, 1382 (Utah 1996). "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *see also id.* ("Rules that govern criminal proceedings are meant to ensure that a trial is a search for truth and that the verdict merits confidence."). "[C]onfidence in the outcome may be undermined at some point substantially short of the 'more probable than not' portion of the spectrum." *Id.*

### ANALYSIS

¶ 11 The State contends that any error was harmless because there is no reasonable likelihood the jury would have decided the case differently absent the erroneously admitted evidence and because the evidence would have been admissible to prove knowledge and intent under rule 404(b), *see* Utah R. Evid. 404(b). Because the State raised its rule 404(b) argument for the first time on appeal—actually for the first time on remand to this court on appeal—we decline to exercise our discretion to consider it. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 ("[A]n appellate court *may* affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record."

(emphasis and internal quotation marks omitted)). Likewise, we find nowhere in the record where the State raised its contention that evidence of Leber's conviction for child abuse against Son should be permitted under Utah Code section 76–2–402(5)(e), which allows the trier of fact to consider "any patterns of abuse or violence in the parties' relationship" when evaluating the reasonableness of a self-defense claim, *see* Utah Code Ann. § 76–2–402(5)(e) (Supp. 2010). Because the State also raises this issue for the first time on appeal, we decline to exercise our discretion to consider it. *See Bailey*, 2002 UT 58, ¶ 13, 52 P.3d 1158.[4]

¶ 12 This case rests on a credibility determination as to whose version of events, Leber's or Son's, is accurate. *See generally Gillespie v. Southern Utah State Coll.*, 669 P.2d 861, 864 (Utah 1983) ("'It is the exclusive province of the jury to determine the credibility of the witnesses ....'" (quoting *Groen v. Tri–O–Inc.*, 667 P.2d 598, 601 (Utah 1983))). While Leber contends he acted in self-defense, the State argues that Leber was the first aggressor or that, even if Son was the first aggressor, Leber's use of retaliatory force was unreasonable.

¶ 13 Son testified that Leber threw Son into a mirror and choked him into unconsciousness because he would not stop playing his guitar. In contrast, Leber contends that his drunk, sixteen-year-old son, who had been trained in boxing, shoved him into a mirror and the two got into a "wrestling match" while Leber was trying to protect himself. Neither the physical evidence nor the other trial testimony sufficiently corroborates either version so as to convince us that

---

4. We note, however, that in amending Utah Code section 76–2–402 in 1994, the legislature clarified that "justification of the use of force in defense of a person applies equally to all persons including *victims* of abuse in ongoing relationships," and that "evidence regarding a *victim's* response to patterns of ... violence [should] be considered ... in determining imminence or reasonableness." Act of Mar. 2, 1994, ch. 26, § 2, 1994 Utah Laws 281 (emphases added). Thus, although still an open question in Utah, which we do not decide today, the "pattern of abuse" language in the statute may refer to the history of violence by the victim in the current case toward the defendant asserting self-defense. Our review of similar statutes in other jurisdictions is consistent with this interpretation. *See, e.g.*, Ark.Code Ann. § 5-2-607 (2010) (providing that self-defense is justified "if the person reasonably believes that the other person is ... imminently about to victimize the person ... from the continuation of a pattern of domestic abuse"); Ga. Code Ann. § 16-3-21 (2010) (stating that during prosecution for murder or manslaughter, a defendant may be permitted to offer "[r]elevant evidence that the defendant had been the victim of acts of family violence or child abuse committed by the deceased").

there is "no reasonable likelihood" that a jury would have decided differently absent the erroneously admitted evidence, *see Johnson*, 1999 UT 35, ¶ 18, 977 P.2d 479.

¶ 14 Despite the State's suggestion to the contrary, the evidence does not establish definitively whether Son or Leber was the first aggressor. A neighbor testified that he heard someone shouting, "Stop hittin' me!" and, "You're hurtin' me!" and then saw one individual running away from another. However, the neighbor said he had "no way of knowing" which person was yelling. Son was not asked about this evidence at trial, and Leber denied that either he or Son yelled the statements heard by the neighbor. Thus, the neighbor's testimony does not provide sufficient corroboration of either Son's or Leber's version of events to allow us to conclude that the jury's credibility determination was likely unaffected by the erroneously admitted evidence.

¶ 15 In addition, the physical evidence is not sufficiently strong to render the erroneously admitted evidence harmless. Both the responding officer and Son's treating physician testified that Son was bleeding from the mouth and had a swollen eye, finger marks on his neck, and scratches and abrasions on his face and back. While the physician testified that the injuries were consistent with Son's version of events, the physician did not testify as to whether the physical injuries could also have been consistent with the version of events described by Leber. Furthermore, Son testified that he "didn't see any" hand prints on his own throat. Although Leber did not deny that Son had physical injuries, Leber testified that the finger marks on Son's neck could have been caused when he grabbed Son during their altercation.

¶ 16 Nor are we convinced that the absence of proof of Leber's injuries, in light of Son's injuries, eliminates any reasonable likelihood that the jury would have found Leber's use of force reasonable. Unlike Son, Leber was never examined for physical injuries. And while Leber testified that he only

suffered a bruise on his chest, he also stated that Son was not as strong as he but was "gettin' close to it." We cannot say that the physical evidence is so strong as to eliminate any reasonable likelihood that the jury could find Leber's use of force reasonable.

¶ 17 The State also relies on the testimony of the police officers as support for its position that the error in admitting the various categories of opinion evidence and prior conduct is harmless. According to the officer who conducted the interview, Son said that Leber started the incident and choked Son to unconsciousness. Both officers spoke with Leber. There is some confusion in the record about whether Leber told one of the officers that Son had "pushed him," whether Leber said "he wasn't gonna allow [Son] to push him around," or both. That same officer testified that Leber told him that "[h]e was just trying to discipline [Son]." The second officer testified that Leber told him both that he was "defending himself" and that he "wasn't going to put up with" Son getting "in his face." The officers' testimony does not convince us that the extensive evidence that was inappropriately admitted did not prejudice Leber.

¶ 18 Where the evidence presented at trial was not clearly supportive of either Son's or Leber's version of events, we cannot say that there is no reasonable likelihood that the outcome would have been different if the jury had not been presented with evidence of Leber's prior conviction for child abuse against son at age six, a 2003 assault, an incident of domestic violence, and Former Wife's testimony that Leber is violent with children, engaged in domestic violence "too many" times to count, and had abused his children "several times." [5] Consequently, the erroneous introduction of that evidence undermines our confidence in the verdict, *see State v. Knight*, 734 P.2d 913, 920 (Utah 1987).

## CONCLUSION

¶ 19 We are not convinced that there is no reasonable likelihood of a different outcome

---

5. With respect to Former Wife's opinion that Leber is violent toward children, the State offers no argument that it was properly admissible.

*See generally* Utah R. Evid. 404(b) (permitting the introduction of "other crimes, wrongs or acts," but not opinion evidence, for proper purposes).

absent the erroneously admitted evidence. The jury was charged with determining which version of events was more credible and the wrongfully admitted evidence may have affected that assessment. Consequently, we reverse and remand for a new trial.

¶20 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and MICHELE M. CHRISTIANSEN, Judge.