**STATE of Utah, in the Interest of D.B., a person under eighteen years of age.**

**D.B., Appellant,**

v.

**STATE of Utah, Appellee.**

**No. 950611–CA.**

Court of Appeals of Utah.

Sept. 26, 1996.

---

L. Clark Donaldson, Salt Lake City, for Appellant.

Jan Graham, Attorney General and Joanne C. Slotnik, Assistant Attorney General, Civil Appeals Division, Salt Lake City, for Appellee.

## OPINION

Before BENCH, BILLINGS and JACKSON, JJ.

BILLINGS, Judge:

Appellant, D.B., appeals his conviction of robbery in violation of Utah Code Ann. § 76-6-301 (1995). Specifically, appellant argues the trial court erred in admitting hearsay evidence under the excited utterance exception and that there was insufficient evidence to convict him of robbery. We affirm.

## FACTS

On January 25, 1995, Lawrence Duaine Pitts, a fifteen year old, stopped at the Crossroads Mall on his way home from work. While there, Pitts saw D.B., whom he had met a couple of weeks earlier. The two exited the mall to the sidewalk area outside, and D.B. asked Pitts if he could "see" Pitts's pager. Pitts handed him the pager. Soon thereafter the pager "went off" and Pitts asked D.B. to give the pager back. D.B. refused. Pitts then repeatedly, ten to fifteen times, asked D.B. to return his pager; D.B. refused each request.

At this point, Pitts became upset because he believed D.B. was not going to return his pager. Pitts handed his glasses to another friend and began playing a game called "slapboxing" with D.B. in hopes of getting D.B. to return his pager. While the two were "slapboxing," D.B. hit Pitts in the eye with a fist rather than an open hand. Apparently startled, Pitts quit the game and walked away from D.B.

Pitts proceeded to a nearby pay phone and called 911. He reported to the operator that he was being harassed and that another "kid" had hit him in the face and had taken his pager. During this call D.B. came over to where Pitts was, asked him who he was talking to, and disconnected the call.

Immediately thereafter, Pitts reentered the mall and approached Officer Griener, a mall security guard. Officer Griener testi-

fied that Pitts walked up to him and stated, "Hey, some kid just punched me in my eye and took my pager and glasses." Officer Griener then laughingly informed Pitts that his glasses were on his head. Pitts responded saying that "[w]ell, he gave those back, but he's still got my pager." Officer Griener testified that during this conversation, Pitts appeared upset that his pager was taken from him, and that he complained about his eye which appeared red. After ascertaining more facts about the occurrence, Officer Griener told Pitts that there was nothing he could do because the incident took place off mall property. Pitts then left the mall.

Shortly thereafter, Officer Griener walked outside to the edge of the mall property where Pitts once again approached him and stated, "There he is and he's got my pager." Officer Griener asked D.B. to return the pager. D.B. responded by saying: "What pager? I don't have a pager." D.B. then started walking away with Pitts following him. Officer Griener said that he watched the two walk away together, arguing. After several minutes of arguing a police officer arrived. When D.B. saw the officer he threw the pager at Pitts and walked away.

The police officer contacted Officer Griener about a robbery. He told them what he knew and directed the police officer to Pitts, who was then on the other side of the street waiting for his bus. Pitts then informed the police officer about the occurrence and told the officer where he could find D.B. Police eventually arrested D.B., and he was charged with and found guilty of robbery.

## ROBBERY

Appellant claims the evidence adduced at trial was insufficient to sustain a conviction of robbery because there was no evidence of force or fear when the pager was originally taken or alternatively at any other time during his possession of the pager.[1]

### A. Utah Code Ann. § 76–6–301—Transactional View of Robbery

At the time D.B was arrested, Utah law defined robbery as "the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear." Utah Code Ann. § 76–6–301(1) (1995) (amended 1996). Utah courts have parsed the statutory language to enunciate five elements to the crime of robbery. *See State v. Germonto*, 868 P.2d 50, 56 (Utah 1993).

> (a) [P]ersonal property is taken from another person's possession, or is in the immediate presence of such other person at the time it is taken, (b) the property is taken contrary to the will of such other person, (c) the taking is accomplished by means of force or fear, (d) the taking is unlawful, (e) the taking is intentional.

*Id.* D.B. admits he intentionally took property from Pitts, thereby satisfying elements (a) and (e). However, D.B. claims the State failed to prove the remaining elements because he did not use force or fear to originally gain possession of the pager from Pitts.

■ In order to decide this case, we must determine whether the robbery statute, under which D.B. was charged, requires that force or fear be involved at the time the victim parts with possession of his property. As this is a question of statutory construction we review the trial court's ruling for correctness. *Bellonio v. Salt Lake City Corp.*, 911 P.2d 1294, 1296 (Utah App.1996). This is a question of first impression in Utah and quite probably one of last impression as the Utah Legislature amended the robbery statute in 1995 shortly after the incident in this case took place. The recent amendment added language which now expressly states that force need not be exerted at the beginning of the theft to qualify as a robbery; force need only be exerted at sometime during the entire course of the transaction.[2] *See* Utah

---

1. D.B. originally contended the trial court erred when it admitted a statement of Pitts under the excited utterance exception to the hearsay rule. However, his counsel conceded at oral argument that since the State agreed there was no force or

fear in the original taking of the pager, any error in admitting this statement was harmless.

2. Utah Code Ann. § 76–6–301 (Supp.1996) now reads:

(1) A person commits robbery if:

Code Ann. § 76–6–301 (Supp.1996). This definition of robbery is known as the "transactional" approach to robbery. *See, e.g., State v. Handburgh,* 119 Wash.2d 284, 830 P.2d 641, 644 (1992).

D.B. argues that when the legislature amended the statute in 1995, it, in essence, admitted that the previous statute did not encompass a transactional approach to robbery. D.B. claims that the previous statute was clear and unambiguous in requiring that force or fear must be involved in the original taking. Our reading of the statutory language leads us to a contrary view.

At the time of the incident the statute at issue read: "Robbery is the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear." Utah Code Ann. § 76–6–301(1) (1995) (amended 1996). The key phrase of the statute is *"accomplished* by force or fear." *Id.* (emphasis added). The statute nowhere states that the initial taking must be by force or fear. Furthermore, Webster's Dictionary defines "accomplished" as "fully attained" or "completed." Webster's Third New International Dictionary 12 (3d ed. 1986). Thus, a better reading of the statute is that there is no robbery until a taking is fully attained or completed by use of force or fear.

■ Furthermore, there is no "taking" from the immediate presence of another until the victim loses the ability to exercise control over the property. *See Webb v. State,* 732 P.2d 478, 479 (Okla.Crim.App.) (defining possession as "the ability to exercise one's power over the personal property"), *cert. denied,* 482 U.S. 930, 107 S.Ct. 3217, 96 L.Ed.2d 703 (1987). Thus, although a person may be given temporary custody of property through consent, he does not necessarily gain possession if the person giving permission still retains control of the property. In *Cantrell v. State,* 184 Ga.App. 384, 361 S.E.2d 689, 690 (1987), the Georgia court was faced with an argument similar to appellant's. In *Cantrell,* the defendant met the victim, an old friend, on the street. *Id.* The defendant asked to see the victim's necklace, so the victim took it off and gave it to the defendant. *Id.* The defendant then began walking away with it, and the victim quickly followed asking for its return. *Id.* The defendant then turned around and hit the victim. *Id.* The Georgia court held that "[a]lthough appellant had custody of the necklace pursuant to [the victim's] consent, possession of the necklace did not change to appellant until [the victim], by means of violence, had been dissuaded from seeking its return. That being so, it was the force which effected the taking." *Id.*

Our reading of Utah's statute also comports with our sister jurisdictions' reading of their similar robbery statutes.[3] In one such case, *State v. Handburgh,* 119 Wash.2d 284, 830 P.2d 641, 644 (1992), the Washington Supreme Court posed a hypothetical which emphasizes the efficacy of our reading of the statute. The court described a situation where a thief takes money from a cash register with no one around. Shortly thereafter, but before the thief flees, the owner comes out of the back room and confronts the thief. Upon seeing the owner, the thief points a gun at the owner and subsequently absconds with the funds. *Id.* Under the analysis advanced by D.B., the thief would only be able to be convicted of theft and assault, but not robbery. *Id.* Yet, if the pointing of the gun had preceded the taking of the cash, the thief would have committed a robbery. It would be a strange result, indeed, if the differing scenarios which are based on the

(a) the person unlawfully and intentionally takes or attempts to take personal property of another from his person, or immediate presence, against his will, by means or force or fear; or

(b) the person intentionally or knowingly uses force or fear or immediate force against another in the course of committing a theft.

(2) An act shall be considered "in the course of committing a theft" if it occurs in an attempt to commit theft, commission of theft, or in the immediate flight after the attempt or commission.

(3) Robbery is a felony of the second degree.

**3.** For example, California and Illinois have interpreted statutes very similar to Utah's as adopting the transactional approach to robbery. *See People v. Webster,* 814 P.2d 1273, 1288 (Cal.1991), *cert. denied,* 503 U.S. 1009, 112 S.Ct. 1772, 118 L.Ed.2d 431 (1992); *People v. Kennedy,* 10 Ill. App.3d 519, 294 N.E.2d 788, 789 (1973).

same action, the same intent,[4] and the same danger to other people would lead to differing crimes and penalties.

▮ Therefore, under a plain reading of the statute, if force or fear is used at any time prior to or concurrent with the victim actually losing the ability to control his chattel, then a robbery has occurred.[5]

### B. Force or Fear

Next, defendant argues that even if the robbery statute does not require force or fear be involved in the original taking, here there is insufficient evidence of force or fear altogether. This court will overturn a conviction based on insufficient evidence " 'only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt.' " *State v. Walker,* 743 P.2d 191, 192 (Utah 1987) (citation omitted).

▮ In the present case there is sufficient evidence for a reasonable trier of fact to conclude that appellant committed a robbery. The juvenile court judge reasonably deter-

mined that D.B. intentionally and unlawfully took possession of Pitts's pager by not returning the pager to Pitts when repeatedly requested. Further, the judge could have reasonably determined that this taking was not fully attained or completed until D.B. ran away with the pager and continually refused to return the pager. Finally, there is sufficient evidence to support the court's finding that the taking was accomplished by force or fear. D.B. forcibly struck Pitts in the eye and prevented Pitts from getting police assistance. Based on these facts, it was reasonable for the juvenile court to find that Pitts was fearful and reasonably believed that he had lost control of his property. We therefore affirm appellant's conviction for robbery.

BENCH and JACKSON, JJ., concur.

---

**4.** *See Handburgh,* 119 Wash.2d 284, 830 P.2d 641, 645 (1992) (noting the " 'thief's willingness to use force against those who would restrain him in flight suggests that he would have employed force to effect the theft had the need arisen.' " (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 8.11, at 786 (2d ed. 1986) (quoting 2 American Law Institute, *Model Penal Code & Commentaries* § 222.1, at 104 (Official Draft & Rev. Comments (1980))).

**5.** Even if we were to conclude the statutory language is ambiguous, our conclusion as to its meaning would be no different. " 'An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.' " *State v. Sweet,* 143 Ariz. 266, 693 P.2d 921, 924 (1985) (quoting *City of Mesa v. Killingsworth,* 96 Ariz. 290, 394 P.2d 410, 414 (1964)). *See also* 1A Norman J. Singer, Sutherland Statutory Construction § 22.01 (5th ed. 1993) (stating "[w]hen a statute is ambiguous, amendment of the statute may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law"). Therefore, the legislature's amendment

to the robbery statute may have been to clarify any perceived ambiguity in the previous statute.

In examining the legislative history of the new robbery statute, we conclude that this in fact is what occurred. The new, broader robbery statute was introduced in 1995 by Representative Patricia Larsen as House Bill 37. Act of March 1, 1995, ch. 222, § 1, 1995 Utah Laws 774. In introducing the bill to the House, Representative Larsen made clear that the amendment was an attempt to clarify Utah's law on robbery as covering a broad transactional approach, because differing states had adopted different views as to the meaning of statutes similar to Utah's pre-1995 robbery statute. Tape of Utah House Floor Debates, 51st Legislature, General Session (March 1, 1995) (Statement of Rep. Patricia Larsen).

Furthermore, this reading of the statute harmonizes it with the entire statutory scheme as aggravated robbery is clearly defined in a transactional manner. *See* Utah Code Ann. § 76–6–302 (1995); *see also State v. Swapp,* 808 P.2d 115, 121 (Utah App.1991) (defining statute to "give effect to the entire statutory scheme").