[No. B181966. Second Dist., Div. Eight. June 20, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK JENKINS, Defendant and Appellant.

COUNSEL

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BOLAND, J.—

## INTRODUCTION

Appellant Mark Jenkins challenges his murder conviction on the grounds the trial court erred by concluding that his prior Utah convictions for aggravated robbery constituted serious or violent felonies under California

law, refusing his request to instruct on second degree murder as a lesser included offense, doubling his life without possibility of parole term under the "Three Strikes" law, and imposing a parole revocation fine.

We conclude the record is insufficient to prove that appellant's Utah priors constitute serious or violent felonies under California law. Appellant was not entitled to instructions on second degree murder, as no evidence was presented that would have absolved him of felony murder but not second degree murder based upon malice. The trial court erred by imposing a parole revocation fine.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant entered a liquor store, placed a white plastic bag on the counter, and pointed a gun at the store's proprietor, Chan Hoeung. Words were exchanged, and Hoeung drew his own gun. Appellant fired at Hoeung, who fired back. As a result of the gunfire, Hoeung died and appellant was injured.

A jury convicted appellant of first degree murder and found true a robbery-murder special-circumstance allegation. It also found he had personally and intentionally fired a gun, causing death, and personally used a gun. The court found appellant had suffered two prior serious or violent felony convictions and served two prior prison terms within the scope of Penal Code section 667.5, subdivision (b). It sentenced appellant to life in prison without possibility of parole, and doubled the term under the Three Strikes law. The court enhanced appellant's sentence by 25 years to life under Penal Code section 12022.53, subdivision (d) and 10 years under Penal Code section 667, subdivision (a)(1).

## DISCUSSION

1. *Appellant's prior Utah robbery convictions do not constitute serious or violent felonies under California law.*

The information alleged appellant had suffered two prior serious and/or violent felony convictions within the scope of the Three Strikes law and Penal Code section 667, subdivision (a)(1). To prove these allegations, the prosecutor introduced the following: (1) a judgment of conviction dated October 30, 1997, reflecting a guilty plea to one count of aggravated robbery in Weber County, Utah; (2) a sentencing worksheet dated August 11, 1997, reflecting a conviction of one count of aggravated robbery in Davis County, Utah; (3) two copies of apparently the same Utah State Prison fingerprint card; and (4) photocopies of photographs of appellant. None of these documents indicate the facts underlying either of appellant's aggravated robbery convictions.

Appellant contends the evidence was insufficient to show that his Utah aggravated robbery convictions constituted strikes or prior serious felonies for purposes of enhancement under Penal Code section 667, subdivision (a)(1). In particular, he argues robbery may be committed in Utah with a different intent than is required in California. He further argues that, whereas California law requires that force or fear be used against the person in possession of the property taken in a robbery, force or fear may be used against any person in Utah. Therefore, he argues, application of the Three Strikes law and Penal Code section 667, subdivision (a)(1) violated due process.

■ Penal Code section 667, subdivision (a)(1) provides for a sentence enhancement for each prior conviction for "any offense committed in another jurisdiction which includes all of the elements of any serious felony" under California law. Under the Three Strikes law, a prior conviction from another jurisdiction constitutes a strike if it is "for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (Pen. Code, §§ 667, subd. (d)(2), 1170.12, subd. (b)(2).) Thus, the prior foreign conviction "must involve conduct that would qualify as a serious [or violent] felony in California." (*People v. Avery* (2002) 27 Cal.4th 49, 53 [115 Cal.Rptr.2d 403, 38 P.3d 1].) "To make this determination, the court may consider the entire record of the prior conviction as well as the elements of the crime." (*Ibid.*) If the record insufficiently reveals the facts of the prior offense, the court must presume the prior conviction was for the least offense punishable under the foreign law. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262 [70 Cal.Rptr.2d 334, 949 P.2d 31]; *People v. Guerrero* (1988) 44 Cal.3d 343, 352 [243 Cal.Rptr. 688, 748 P.2d 1150].) Robbery constitutes both a serious and violent felony. (Pen. Code, §§ 667.5, subd. (c)(9), 1192.7, subd. (c)(19).)

The proof of appellant's Utah offenses consisted of records that established only the existence, date, and statutory authority of his convictions. Because this evidence did not establish any of the facts underlying the charges or convictions, the determination of whether these offenses would constitute serious or violent felonies if committed in California must be made from an analysis of the elements of aggravated robbery under Utah law and a comparison of Utah and California law.

### a. *Target of force or fear*

■ In 1997, a person committed aggravated robbery in Utah "if in the course of committing robbery, he: [¶] (a) uses or threatens to use a dangerous weapon as defined in Section 76-1-601; [¶] (b) causes serious bodily injury upon another; or [¶] (c) takes . . . an operable motor vehicle." (Utah Code Ann. (1953) § 76-6-302, subd. (1), p. 255.)

In 1997, the Utah robbery statute provided that "[a] person commits robbery if: [¶] (a) the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear; or [¶] (b) the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft." (Utah Code Ann. (1953) § 76-6-301, subd. (1).)[1]

Appellant contends that under subdivision (1)(b) of section 76-6-301, a defendant could be convicted of robbery if he stole the property of one person without the use of force or fear, but used force or fear against a second person without any possessory interest in the property during his flight from the scene of the theft.

■ Under California law, a theft accomplished without the use of force or fear becomes robbery if force or fear is used during asportation. (*People v. Estes* (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909].) However, the force or fear must be used against a person who has a possessory interest in the stolen property in order to transform the theft into a robbery. (*People v. Nguyen* (2000) 24 Cal.4th 756, 764 [102 Cal.Rptr.2d 548, 14 P.3d 221].) This distinguishes California law from that of many other states. (*Id.* at pp. 763–764.)

Subdivision (1)(b) of Utah's robbery statute does not appear to require that the object of a defendant's application of force or fear have any possessory interest in the property taken. Although the "take personal property in the possession of another . . . by means of force or fear" language of subdivision (1)(a) includes a possessory interest requirement, the language of subdivision (1)(b) is radically dissimilar. Subdivision (1)(b) simply requires the use of force or fear "against another in the course of committing a theft." Subdivision (1)(b) does not require that the force or fear be used against the person from whom the property was stolen or otherwise specify any limitation on the use of force or fear to qualify the crime as robbery, except that the force or fear must be applied "in the course of committing a theft." Subdivision (2) defines "in the course of committing a theft" to mean acts during "an attempt to commit theft, commission of theft, or . . . the immediate flight after the attempt or commission." Accordingly, the statute clearly encompasses the scenario posed by appellant: the use of force or fear against a bystander or good Samaritan during flight after commission of a theft against another person. Under California law, such a scenario results in the commission of a theft and an assault or battery, but no robbery. Under Utah law, however, it appears that the offense committed would be robbery.

---

[1] Further undesignated statutory references in this section of the opinion refer to Utah Code Annotated (1953) section 76-6-301, as it existed in 1997.

Respondent argues that subdivision (1)(b) refers to "the situation where a defendant does not use force or fear at the exact time he takes the victim's property from the victim." Although subdivision (1)(b) would certainly apply to the scenario suggested by respondent, nothing in its language restricts it to such application. Had the Utah Legislature intended to so limit subdivision (1)(b), they could, and no doubt would, have so specified. They could, for example, have phrased the subdivision as follows: "the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft from that person."

Respondent relies upon a single Utah case, *State in Interest of D.B.* (Utah Ct.App. 1996) 925 P.2d 178. There, the court interpreted a version of section 76-6-301 in effect in 1995. That statute defined robbery as " 'the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear.' " (925 P.2d at p. 180.) The statute in issue in *D.B.* was thus equivalent to subdivision (1)(a) of the version of section 76-6-301 in effect in 1997. Amendments in 1996 created the version of the statute applicable at the time of appellant's offenses in 1997. Accordingly, *D.B.* did not apply or interpret subdivision (1)(b), which is the subject of appellant's contention. Moreover, the facts in *D.B.* are distinguishable from the scenario posed by appellant, as the person from whom property was taken was the same person against whom force was applied. (*D.B., supra*, 925 P.2d at p. 179.) The issue in *D.B.* concerned the timing of the application of force, as the defendant originally gained possession of the victim's property by asking to see it. (*Id.* at p. 180.) The victim willingly handed it over, the defendant failed to return it upon request, a face-slapping altercation ensued, and the defendant punched the victim in the eye. (*Id.* at p. 179.) As the victim owned and physically possessed the property stolen by the defendant, the court did not consider whether force or fear must be used against a person with a possessory interest in the stolen property. Accordingly, for numerous reasons, *D.B.* does not support respondent's interpretation of subdivision (1)(b).

Our research has revealed no interpretations of the Utah robbery statute supporting respondent's position. The plain language of subdivision (1)(b) supports appellant's contention that Utah, like the other states to which the California Supreme Court referred in *People v. Nguyen, supra*, 24 Cal.4th at pages 763 through 764, does not require that the person against whom force or fear is used have a possessory interest in the property taken. Given the absence of precedent reading such a requirement into section (1)(b), we must give effect to the plain language of the statute, and conclude that, as in several states other than California, one may be convicted of robbery for employing force or fear against a person who lacks any possessory interest in the property taken in the course of a theft.

■ It therefore cannot be said that appellant's Utah robbery convictions include all of the elements of robbery under California law. This conclusion is not altered by the fact that they were aggravated robberies, as the aggravation statute does not supply the potentially missing possessory interest requirement.

Respondent argues that appellant's Utah offenses constitute serious and violent felonies because they were punishable by a term of five years to life, and he received an indeterminate sentence of five years to life for each offense. However, Penal Code section 667, subdivisions (a)(1), (d)(2), and section 1170.12, subd. (b)(2) provide that offenses committed in other jurisdictions must include all of the elements of a serious or violent felony under California law in order to trigger application of the Three Strikes law or the five-year enhancement provided by Penal Code section 667, subdivision (a)(1). Accordingly, only offenses committed in California may qualify as serious or violent felonies simply because they carry an indeterminate term as a potential penalty.

### b. *Permissibility of retrial*

The parties differ regarding the appropriate remedy for our finding that the record was insufficient to establish that appellant's Utah convictions constituted serious or violent felonies. Respondent argues for remand to allow the prosecutor to retry the strike and enhancement allegations, whereas appellant contends retrial would not be permissible, as the error was one of insufficiency of the evidence. Appellant recognizes that retrial is generally permissible pursuant to *People v. Barragan* (2004) 32 Cal.4th 236 [9 Cal.Rptr.3d 76, 83 P.3d 480], and *People v. Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121], but argues that these decisions are inapplicable to foreign convictions in the wake of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]. He bases this claim on the theory that "proof of a strike based on a foreign conviction involves additional facts beyond the fact of the conviction itself, namely, that the record of the foreign conviction shows conduct equivalent to violation of a qualifying California statute."

■ In *People v. Monge, supra,* 16 Cal.4th 826, the California Supreme Court held that neither the federal nor state constitutional double jeopardy prohibition bars retrial of a prior conviction allegation where insufficient evidence was produced at trial. (*Id.* at p. 843.) The court distinguished sentencing proceedings in which the truth of a prior conviction allegation is determined from the trial of the charged offense or the guilt phase in a capital trial. It noted that such a proceeding is not a "prosecution of an additional criminal offense carrying the stigma associated with a criminal charge; rather

it is merely a determination, for purposes of punishment, of the defendant's *status,* which, like age or gender, is readily determinable from the public record. Moreover, when, as here, the court has bifurcated the prior conviction issue, the defendant begins the prior conviction trial having already suffered the embarrassment of the present conviction. The marginal increase in embarrassment attributable to the prior conviction trial is not comparable to the embarrassment of an unproved criminal charge. Finally, a prior conviction trial is simple and straightforward as compared to the guilt phase of a criminal trial. Often it involves only the presentation of a certified copy of the prior conviction along with the defendant's photograph and fingerprints. In many cases, defendants offer no evidence at all, and the outcome is relatively predictable." (*Id.* at p. 838.)

*People v. Monge, supra,* 16 Cal.4th 826, further noted that even if the determination of a prior conviction allegation presents a factual issue, it differs from the trial of the charged offense because the prosecutor "may only present evidence from the *record* of the prior conviction. [Citation.] The defendant, and any member of the public, can review that record before the prior conviction trial and accurately forecast the trial's outcome. When a trial, even a very important trial, is short and readily predictable in this way, the defendant suffers correspondingly less embarrassment, expense, and anxiety. Significantly, the defendant does not need to sit for weeks or months while witnesses describe in detail to a jury and the public the specifics of his alleged unlawful activities. For these reasons, we conclude the financial and emotional burden of a prior conviction trial is minor as compared to a guilt trial." (*Id.* at p. 839.) In addition, proceedings to determine the truth of a prior conviction allegation involve "factual determinations [that] are generally divorced from the facts of the present offense, and the evidence does not overlap" as the evidence in the penalty phase overlaps the evidence in the guilt phase of a capital trial. (*Ibid.*) Finally, proceedings to determine the truth of a prior conviction allegation "merely determine[] a question of the defendant's continuing status, irrespective of the present offense, and the prosecution may reallege and retry that status in as many successive cases as it is relevant [citation], even if a prior jury has rejected the allegation [citation]. If a jury rejects the allegation, it has not acquitted the defendant of his prior conviction status. [Citation.] 'A defendant cannot be "acquitted" of that status any more than he can be "acquitted" of being a certain age or sex or any other inherent fact.' [Citation.]" (*Ibid.*)

In *Monge v. California* (1998) 524 U.S. 721 [141 L.Ed.2d 615, 118 S.Ct. 2246], the United States Supreme Court affirmed *People v. Monge, supra,* 16 Cal.4th 826, and held that the double jeopardy clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context, even after a reversal based on insufficient evidence and even if the sentencing

proceeding possessed the "hallmarks of a trial on guilt or innocence." (*Monge v. California, supra*, 524 U.S. at p. 733.)

*People v. Barragan, supra*, 32 Cal.4th 236, rejected an attempt to invoke double jeopardy protections in the guise of a due process claim where double jeopardy was inapplicable. (*Id.* at p. 244.) "Defendant, who cannot, after *Monge I* [*People v. Monge, supra*, 16 Cal.4th 826] and *Monge II,* [*Monge v. California, supra*, 524 U.S. 721] invoke the protection of the double jeopardy clause to bar retrial, invites us to achieve the same end via the due process clause. We decline his invitation because, as the high court told us in *Dowling* [*v. United States* (1990) 493 U.S. 342 [107 L.Ed.2d 708, 110 S.Ct. 668]]: 'Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' " (*Ibid.*)

*Apprendi v. New Jersey, supra*, 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), dealt with a sentencing determination hinging on a factual finding arising from the commission of the charged crime. At issue was a New Jersey hate crime statute which provided for a greater term of imprisonment if the trial judge found, by a preponderance of the evidence, that, in the commission of the charged offense, the defendant acted with the intent to intimidate a person or group because of race, color, gender, handicap, religion, sexual orientation or ethnicity. (*Id.* at pp. 468–469.) The court noted that "[b]y its very terms, this statute mandates an examination of the defendant's state of mind—a concept known well to the criminal law as the defendant's *mens rea.*" (*Id.* at p. 492, fn. omitted.) The court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The court thus expressly distinguished the determination of sentencing factors based upon "the fact of a prior conviction" from determinations involving factual findings arising from the commission of the current crime. The court expressly noted that *Monge v. California, supra*, 524 U.S. 721, was a "recidivism case in which the question presented and the bulk of the Court's analysis related to the scope of double jeopardy protections in sentencing." (*Apprendi, supra*, 530 U.S. at p. 489, fn. 14.) The court further commented that "[m]ost telling of *Monge*'s distance from the issue at stake in this case is that the double jeopardy question in *Monge* arose because the State had failed to satisfy its own statutory burden of proving beyond a reasonable doubt that the defendant had committed a prior offense (and was therefore subject to an enhanced, recidivism-based sentence)." (*Ibid.*)

Thus, *Apprendi* did not, as appellant claims, hold that all "federal constitutional protections apply to every fact that increases the penalty beyond the statutory maximum, except for '*the fact* of a prior conviction.' " Instead, it

required any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum to be charged, submitted to a jury, and proved beyond a reasonable doubt. (*Apprendi, supra,* 530 U.S. at p. 490.) Assuming, for the sake of argument, that *Apprendi* applied to the prior conviction allegations against appellant, he would be entitled to retrial by a jury, not immunity from retrial.

Moreover, neither *People v. Barragan, supra,* 32 Cal.4th 236, nor *People v. Monge, supra,* 16 Cal.4th 826, was based upon the theory that only the "fact of the conviction itself" had to be proved. Both cases were based, essentially, on the inapplicability of double jeopardy given the nature and attributes of the proceeding to determine the truth of prior conviction allegations. Accordingly, the fact that a prior conviction was suffered outside of California does not negate application of *People v. Barragan, supra,* 32 Cal.4th 236, or *People v. Monge, supra,* 16 Cal.4th 826.

■ Finally, we note that while *Apprendi* may indeed require a jury determination of factual issues pertaining to foreign prior convictions, where, as here, the prosecutor introduces bare-bones evidence of the fact of the foreign conviction and its general nature, the issue of whether the foreign jurisdiction's law contains the same elements as California law is a legal one, to be decided by the judge, not the jury. Accordingly, there is no merit to appellant's claim that *Apprendi* precludes application of *People v. Barragan, supra,* 32 Cal.4th 236, and *People v. Monge, supra,* 16 Cal.4th 826, because additional factual determinations were required. An additional legal determination was required, but the only factual determination was that expressly excepted from the scope of *Apprendi,* i.e., whether appellant had suffered the Utah convictions alleged in the information.

The trial court's findings on the strike and Penal Code section 667, subdivision (a)(1) allegations must be reversed for insufficiency of evidence. However, these allegations may be retried if the prosecutor obtains additional evidence regarding the Utah robberies to establish that appellant used force or fear against a person with a possessory interest in the property taken.

Our ruling on this issue moots appellant's claim that the court erred by doubling his term of life in prison without possibility of parole pursuant to the Three Strikes law.

2. *The trial court was not required to instruct upon second degree murder as a necessarily included offense.*

The information charged appellant with murder with malice aforethought. However, the prosecutor tried the case solely upon a felony-murder theory.

Although appellant requested instructions on manslaughter and second degree murder, the court instructed the jury only upon the theory of first degree felony murder.

Appellant contends the court erred by failing to instruct upon second degree murder based upon express malice. He argues it was a necessarily included offense under the accusatory pleading test and the jury may have had reasonable doubt whether he was engaged in an attempt to rob Hoeung.

■ A trial court must instruct on lesser included offenses whenever substantial evidence raises a question as to whether all of the elements of the charged offense are present. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008 [108 Cal.Rptr.2d 291, 25 P.3d 519].) Substantial evidence is evidence sufficient to deserve consideration by the jury, i.e., evidence a reasonable jury could find persuasive. Absent substantial evidence, a court need not give a requested instruction regarding a lesser included offense. (*Ibid.*)

An offense is necessarily included in another if either the statutory elements of the greater offense or the facts alleged in the accusatory pleading include all of the elements of the lesser offense, so that the greater offense cannot be committed without also committing the lesser. (*People v. Sanchez* (2001) 24 Cal.4th 983, 988 [103 Cal.Rptr.2d 698, 16 P.3d 118].)

Under the accusatory pleading test, second degree murder based upon malice, rather than upon commission of a felony, was a necessarily included offense of the charged offense. However, the trial court was required to instruct upon second degree murder only if substantial evidence raised a question as to whether all of the elements of felony murder were established. In other words, it was required to instruct only if there was evidence that, if believed by the trier of fact, would absolve the defendant of the greater offense, but not of the lesser. (*People v. Memro* (1995) 11 Cal.4th 786, 871 [47 Cal.Rptr.2d 219, 905 P.2d 1305].)

The crime was recorded on the liquor store's surveillance video, which was played at least three times during trial. During one playing, the prosecutor described for the record what was visible on the tape: "To the right side of the video footage is the store counter; a cash register; behind the counter is Nhean who testified first this morning; her husband, the named victim in this case, standing to her left and the bottom right portion of the screen; to the upper left portion of the screen is the entrance to the store where an individual wearing at least what can be seen on this videotape a dark colored hooded sweatshirt, hood over the head, dark colored pants, white shoes, what appear to be gloves or at least dark hands. [¶] If you look, the person in the sweatshirt is seen removing a white object with his left hand and placing it

onto the counter and removing what appears to be a handgun with his right hand; both items coming from the front pocket area of the sweatshirt. [¶] There are words exchanged, and subsequently we see two gunshots. The first coming from the person in the sweatshirt. The second subsequently coming from the victim in this case. [¶] And certainly words, I think [defense counsel], we both agree what we do hear are 'I'll shoot you.' At least those words. And also the words, 'Oh, shit.' [¶] So for the record I just want to have at least that description that we can both agree upon, and I'll continue to play the tape."

Defense counsel agreed with the prosecutor's description of the tape contents, but added that she could "also hear other things earlier" on the tape and that "at the time that the perpetrator pulls out his own gun, at the same time as the bag comes out, Mr. Chan, the victim, has also pulled then his gun out. [¶] So the first gun that appears to be the perpetrator's gun. The second gun that appears is the victim's gun. And the victim has his gun out before any shots are fired, and then it appears the perpetrator fires first and then the victim fires."

Hoeung's wife was present in the store during the robbery and testified at trial. She did not, however, testify regarding what happened or was said during the course of the offense.

Pita Mounga identified appellant's voice on the videotape and testified that appellant, who was his wife's nephew, arrived at Mounga's home on the date of the liquor store shooting and said he had been shot in a store. Appellant was bleeding. Against appellant's will, Mounga's wife called 911. Mounga placed appellant's gun in a trash can outside the house, from which the police later recovered the gun and ammunition. Mounga also testified that the dark blue gloves recovered from his living room by police belonged to appellant. Mounga's house was located about one-half mile from Hoeung's liquor store.

Appellant argues the jury may have doubted that he was engaged in a robbery attempt, as he did not declare it to be a robbery or demand money. He further argues the jury might have concluded that appellant became involved in a dispute with Hoeung and shot him in anger. However, neither appellant nor any other witness testified regarding a dispute or anger. Appellant's claims are all based upon speculation. The facts described by the prosecutor and defense counsel, particularly appellant's conduct in placing a plastic bag on the store's counter and more or less simultaneously pointing a gun at Hoeung, strongly suggest a robbery attempt, i.e., appellant brought a bag with him and placed it before Hoeung while threatening him with the gun in order to persuade Hoeung to place property inside the bag so appellant could carry it away without paying for it. While it is certainly possible that

appellant had some intent other than, or in addition to, robbery, nothing in the record diminishes or negates the strong inference of an intent to rob established by appellant's conduct in carrying and presenting the bag. Accordingly, there was no substantial evidence that, if believed by the jury, would have absolved appellant of felony murder, but not of second degree murder based upon express malice. The trial court did not err by refusing to instruct upon second degree murder.

### 3. *The trial court erred by imposing a parole revocation fine.*

Appellant contends the trial court erred by imposing a parole revocation fine, as his sentence of life in prison without possibility of parole does not include a term of parole. The reporter's transcript of the sentencing hearing does not indicate that the court imposed a parole revocation fine, though it did impose a restitution fine under Penal Code section 1202.4, subdivision (b). The clerk's transcript and the abstract of judgment, however, indicate a $10,000 parole revocation fine was imposed under Penal Code section 1202.45.

Penal Code section 1202.45 provides, in pertinent part, that "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional parole revocation restitution fine shall be suspended unless the person's parole is revoked."

A parole revocation fine may not be imposed for a term of life in prison without possibility of parole, as the statute is expressly inapplicable where there is no period of parole. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183 [83 Cal.Rptr.2d 157].)

Respondent argues that a parole revocation fine was proper with respect to the portion of appellant's sentence providing for a term of 35 years to life. *People v. Oganesyan, supra,* 70 Cal.App.4th 1178, rejected an identical contention. (*Id.* at pp. 1183–1186.) For the reasons stated in that opinion, we conclude the statute is inapplicable to appellant, whose sentence does not include a period of parole. Upon resentencing, the court may not impose a Penal Code section 1202.45 fine.

## DISPOSITION

Appellant's sentence is vacated. The prior serious or violent felony findings under Penal Code section 667, subdivision (a)(1) and the Three Strikes law are reversed and the cause is remanded for further proceedings in accordance with this opinion. In all other respects, the judgment is affirmed.

Cooper, P. J., and Rubin, J., concurred.

On July 13, 2006, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 18, 2006, S145507. George, C. J., and Baxter, J., did not participate therein.