Jeffrey L. BOWMAN, Petitioner—
Appellant,

v.

. James A. YATES, Warden,
Respondent—
Appellee.

No. 08–16412.

United States Court of Appeals,
Ninth Circuit.

Submitted April 14, 2009.*

Filed April 17, 2009.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Lynda A. Romero, Attorney at Law, San Diego, CA, for Petitioner–Appellant.

Jeremy Friedlander, Deputy Attorney General, AGCA–Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before: D.W. NELSON, BERZON and CLIFTON, Circuit Judges.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

MEMORANDUM **

Appellant-petitioner Jeffrey Leonard Bowman appeals the denial of his petition for writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Bowman first contests the exclusion of four pieces of evidence relating to his state of mind on the evening of the crime, arguing that he was deprived of a meaningful opportunity to present a complete defense. "In general, it has taken 'unusually compelling circumstances . . . . to outweigh the strong state interest in administration of its trials.'" *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir.2009) (quoting *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir.1983)). In *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), the Supreme Court cautioned that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *Id.* at 308, 118 S.Ct. 1261. "Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.*

The California Court of Appeals held that although the excluded evidence served to corroborate his theory of intoxication, there was ample evidence in the record to support the conclusion that Bowman had taken psychedelic mushrooms. This was not an objectively unreasonable application of Supreme Court precedent. In the Supreme Court cases finding a violation of Due Process, the excluded evidence was "critical to [the] defense." *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 296–97, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Here, the jurors knew that Bow-

man had taken a hallucinogenic drug, "wasn't all there," and spoke of "Muppets." The jurors were also advised by Dr. Smith of the mental impact of psychedelic mushrooms, and heard that Bowman was too impaired to drive. The exclusion of the additional pieces of evidence therefore did not deprive him of his ability to assert his defense.

■ Bowman next argues that there was insufficient evidence of his specific intent to commit the underlying felonies. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although California courts allow a criminal defendant to introduce evidence of voluntary intoxication to negate intent, proof of intoxication does not *require* that the jury find that the defendant did not intend to commit the crime. *See, e.g., People v. Haley,* 34 Cal.4th 283, 313–14, 17 Cal. Rptr.3d 877, 96 P.3d 170 (2004); *People v. Lewis,* 25 Cal.4th 610, 644, 649–50, 106 Cal.Rptr.2d 629, 22 P.3d 392 (2001). Intent is frequently inferred from conduct. *See Manta v. Chertoff,* 518 F.3d 1134, 1142 (9th Cir.2008); *People v. Jenkins,* 140 Cal. App.4th 805, 44 Cal.Rptr.3d 788, 798 (2006). Here, the four men came in and demanded money and drugs. Pinckard testified that the perpetrators repeatedly stated "I know you got paid." The perpetrators acted in concert when they entered the house. After they received no answer in the front, they entered from the back door. Bowman covered his face with either a mask or a hood. In light of this evidence, we cannot say that *no* rational trier of fact could have found that Bowman had the requisite intent.

■ Finally, Bowman argues that the admission of Hanley's statement, in violation of the Sixth Amendment, was not harmless error because there was no other

evidence of a plan or scheme to rob Aubrey. This argument is refuted by the record. Billie Pinckard stated that Aubrey received ten thousand dollars, from the casino, on December 1, 1999. The crime occurred the following day. Pinckard also testified that the four men entered the house with their faces covered, and that the perpetrators repeatedly asked for money or drugs, stating "I know you got paid." One of the four men kept an eye on Pinckard while the others searched. Bonnie Steele, who accompanied the four men to her uncle Aubrey's house, also testified that she was aware that Aubrey was receiving payments around the first of each month. The timing of the robbery, the statements made by the perpetrators, the wearing of the masks, and the coordination of the four men all indicate that the defendants intended to rob Aubrey.

**AFFIRMED.**