Filed 12/16/20  P. v. Lydon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C074335 |
| Plaintiff and Respondent, | (Super. Ct. No. SF115784A) |
| v. | |
| JOHN JOSEPH LYDON, | |
| Defendant and Appellant. | |

A jury found defendant John Joseph Lydon guilty of first degree murder and assault by a life prisoner.  It also found the prior murder special circumstance true.  In the penalty phase of trial, the jury fixed the sentence at death.  The trial court, however, later modified the death sentence to life without possibility of parole.

On appeal, defendant asks us to review the sealed in camera record of the hearing on his *Pitchess*[1] motion to determine whether the trial court complied with its procedural

---

[1]  *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

1

obligations and, if so, whether it abused its discretion in finding no documents responsive to his discovery request.  Defendant also raises several claims of sentencing error, which the People properly concede.

Having reviewed the *Pitchess* proceedings, we conclude any procedural irregularity was harmless.

We will modify the judgment to correct the sentencing errors and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, it was undisputed that defendant, a prison inmate, killed his cellmate, a convicted child molester.  The evidence showed defendant used a torn-up bed sheet to strangle the victim in their cell.  Defendant confessed to the killing shortly after committing it.  And when another inmate asked, " 'Did you really strangle him because he was a child molester?,' " defendant answered, " 'Yeah, I did.  But I better stop talking, 'cause the C.O. is writing all this down.' "

In the guilt phase of trial, a jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a); Count 1))[2] as well as assault by a life prisoner (§ 4500; Count 2)).  The jury also found true a prior murder special circumstance based on defendant's prior second degree murder conviction (§ 190.2, subd. (a)(2))[3] and that he had suffered four prior strike convictions.

In the sanity phase, the jury found defendant was sane when he committed the charged offenses.

---

[2]  Undesignated statutory references are to the Penal Code at the time of the charged offenses.

[3]  In 2006, defendant was convicted of the second degree murder of another cellmate, also a convicted child molester.

2

In the penalty phase, the jury fixed defendant's punishment at death. But the trial court later granted defendant's section 190.4, subdivision (e) motion to modify the sentence, imposing two concurrent terms of life without the possibility of parole.

## DISCUSSION

## I. *Pitchess* Motion

On appeal, defendant asks us to review the record of the sealed in camera *Pitchess* hearing to determine if the trial court followed the required procedure. And if not, defendant argues, remand is required. The People agree this court must independently review the in camera proceedings. But the People maintain defendant can show neither abuse of discretion nor prejudice from the trial court's ruling that no documents responsive to the *Pitchess* motion existed.

## A. Background

After the preliminary hearing, defendant filed a *Pitchess* motion seeking discovery of personnel records of eight correctional officers at the prison. It sought, inter alia, complaints against the officers for "use of, or sharing knowledge of," inmates' prior acts or convictions, concerning "sexual offenses, preferences, or sexual orientation."

The motion asserted that such information could be used during the guilt phase to show defendant lacked the requisite "mental state for murder or malice," and during the penalty phase to show the death penalty was not appropriate given the circumstances of the crime.[4]

---

[4] The motion recited testimony from the preliminary hearing that just before the murder, defendant was told by a prison captain that he would be moved to a cell with a cellmate. Defendant responded that he was classified as single cell only. The captain replied that he ran the prison and would tell him where he would be housed. Defendant said he could be housed with anyone except a convicted child molester. The captain then ordered defendant housed with the victim. Defendant did not assert that the captain told him his new cellmate was a convicted child molester.

3

The motion attached a declaration of defense counsel, averring the Department kept written records of citizen complaints and investigations on subjects including correctional officers' using, sharing, or disseminating to others information about inmates' "sexual offenses, preferences, or sexual orientation"; officers' "untruthfulness and/or a propensity for fabricating evidence, including statements to investigators, or for destroying or covering up evidence"; and officers' use of force against Department employees and/or inmates.

The declaration also recited inmates' statements to a defense investigator. One or more[5] inmates reported hearing correctional officers talk of putting sex offenders in cells with non-sex-offenders, "to get the sex offender inmate killed." "[T]he non sex offender inmate is told to handle the situation (i.e. hurt the sex offender inmate) or else the correctional officers will take things from the non sex offender inmate, such as their television or magazines." Officers would also joke about inmates believed to be sex offenders and would tell other inmates which inmates were suspected of being sex offenders. And after the murder, one officer said the victim deserved to be killed.

Two officers, according to the declaration, told the defense investigator they assumed the victim was a child molester because he was an older white man without tattoos and did not associate with other inmates.

**The Hearings on the *Pitchess* Motion and the Court's Ruling**

**Initial Open Court Proceedings**

At the hearing, the trial court questioned how the requested material could help the defense, noting it appeared to be "aimed at a civil lawsuit." Defense counsel replied: "I think that if [defendant] was intentionally placed in a cell with a person that he had told

---

[5] The inmates' names and inmate numbers have been redacted from the copy of the declaration in the record before us. Because the statements appear in separately labeled paragraphs, it appears that these are the statements of more than one inmate.

the Department of Corrections that he had problems with, that certainly goes to provocation. Provocation is definitely a defense to malice." Counsel added that such evidence would also go to mitigation at the penalty phase. The court observed that mitigation was "probably the strongest argument," adding, "I suppose that given the circumstances here, it theoretically could certainly be brought up in mitigation."

The trial court ultimately granted the motion as to evidence of "prior complaints that inmates have been deliberately placed in cells with other inmates whom they have previously had some kind of conflict with." The court added, "I suppose that that might be relevant." The ruling was also limited to officers named in the motion.[6] An in camera hearing was then held.

**The In Camera Hearing**

At the in camera hearing, the Department's "litigation coordinator," appeared along with the Department's counsel. The court stated the proceeding was limited to "complaints about those officers deliberately putting people in cells for the purpose of creating conflicts likes [*sic*] this one or anything similar to this one anyway."

Without putting the litigation coordinator under oath or questioning her to establish that she was a custodian of records or a representative of the custodian of records, the court asked her whether any named officer had any such complaints. She responded that she had "reviewed all the files, and there [are] no complaints. Nothing responsive." She added that she had "brought numerous files from our official personnel file, our investigative services unit files, our employee relation office files, [and] our appeals files which have staff complaints. I have reviewed all those for all the named staff members and there is absolutely nothing reflecting that."

---

[6] Defendant does not contend that the trial court erred in limiting its grant of the motion.

The court stated, "I don't think the Court personally has to go through all these records to verify that. I think I can rely on the representation of [the] Department of Corrections on that basis." The court asked the litigation coordinator if she had anything to add. She said she did not.

**Open Court Proceedings After the In Camera Hearing**

In open court, the trial court reported it had found nothing responsive to defendant's motion, explaining that it based this conclusion on the litigation coordinator's representation. Defense counsel argued the court was required to personally examine the files. The court disagreed, stating that "two large bankers boxes" had been brought and it would take "hours . . . if not days" to confirm the litigation coordinator's representation. Still, the court invited counsel to produce contrary authority. Counsel did not do so during the hearing.

After the defense noted the litigation coordinator was not an officer of the court and could have misinterpreted what the trial court had ruled discoverable, the court called the litigation coordinator to the stand and placed her under oath in open court. The Department's counsel stated that the litigation coordinator "came here with *all the records on all the officers*, and she's fully prepared to answer any of the Court's questions concerning the *Pitchess* motion involved here." (Italics added) Without waiving his continued objection to the procedure, defense counsel questioned the litigation coordinator.

The litigation coordinator testified that she reviewed all the files on the officers over the course of three days, one of which she spent almost the entire day. Defense counsel asked whether she had "reviewed all the files that I had requested," and coordinator said she had. She also testified that in performing her review, she had defendant's motion and looked for information listed therein.

As to the files themselves, the coordinator "guess[ed]" that the personnel file for the captain, who allegedly ordered defendant into the shared cell, contained 50 pages, but

6

that included "everything from his request for tax exemption and medical and dental." Only approximately 10 pages involved his performance evaluations, which would include complaints if the complaint resulted in a negative evaluation, was substantiated, or if the officer received a "counseling chrono or something because of the behavior." Other officers' files were similar in size. The coordinator also testified that the total number of pages for the performance evaluation portion of all the files was probably less than 100 pages.

Following questioning, the trial court observed that even if it personally read the "50 pages" associated with the officers — which it acknowledged would not be "burdensome" — the court would still be accepting the Department's representation that there was nothing beyond those 50 pages. In short, "there is no way that the Court could ever do a thorough enough job, unless at some point it accepted this representation of the Department. " The court then reiterated that it relied on the Department's representation that the files contained nothing responsive to the *Pitchess* motion.

### Defendant's Motion for Reconsideration

Citing *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*), defendant moved for reconsideration, arguing *Mooc* requires the trial court, on a *Pitchess* motion, to determine that the agency has provided all potentially relevant records, to examine them personally, and to make a record of what documents it has reviewed.

Citing *People v. Guevara* (2007) 148 Cal.App.4th 62, the Department responded that the litigation coordinator's sworn testimony in open court established that the Department had furnished all relevant records, and thus the trial court properly relied on the representation that no responsive documents existed.

The trial court denied the motion, explaining: "You know, to begin with, I'm not so sure I made a correct ruling with regard to this initially. . . . [T]he defendant's motion was probably improvidently granted . . . . But in excess of caution, I did feel that the defendant ought to at least have some information about this even though . . . I really

7

don't honestly see how it can be relevant to this case." Though it added, the information would be relevant to a civil action.

As to the procedure followed, the court explained: "I have to rely on the good faith and honesty of the [D]epartment's representatives to tell me what records they brought and what records they searched and whether there is anything. This was basically a negative report, that there was nothing in the personnel records."

It continued, "if the [D]epartment is going to lie to me, they wouldn't bring the stuff that shows that there was something positive in the records anyway. . . . So it's not going to do me any good other than to rely on what the representatives of the Department of Corrections say here, and the Attorney General and so forth. . . . And so I'm not sure that *Mooc* actually is even a practical way of handling things. But it's clearly the rule in that case anyway, under those circumstances. And I would proceed to spin my wheels here and do it anyway if I thought it would do any good, but it's not going to. It's not a practical way of handling this situation under these particular circumstances."

Then in stating it would order nothing further, the court reiterated, "I probably made a mistake in ordering it to begin with. But it sounds like it's very important to the defense, so I thought I would at least give them a chance to go through that stuff if there was anything."

### B. Analysis

On appeal, defendant asks us to review the record of the sealed in camera hearing to ascertain whether the trial court followed this procedure. (*People v. Prince* (2007) 40 Cal.4th 1179, 1286.) To that, he notes a trial court reviewing a *Pitchess* motion in camera must (1) place the custodian of records under oath; (2) determine whether the custodian of records is knowledgeable as to the documents in the agency's possession and the agency's effort to collect such documents; (3) determine what documents or categories of documents were not presented to the court and why not; (4) determine that the custodian of records has provided a complete set of potentially relevant documents

8

and obtain an explanation on the record as to why any other documents were withheld; (5) determine for itself, without simply relying on the custodian of records' representation, whether there are any potentially responsive documents; and (6) make a record of the documents it reviewed. (*Mooc, supra*, 26 Cal.4th at pp. 1228-1229 & fn. 4; *Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 39; *People v. White* (2011) 191 Cal.App.4th 1333, 1340; *People v. Wycoff* (2008) 164 Cal.App.4th 410, 414-415; *People v. Guevara, supra*, 148 Cal.App.4th at p. 69.)

Defendant maintains that if the trial court did not follow that procedure, remand is required, either —depending on the nature of the error — for a new *Pitchess* hearing, or for a hearing to "to augment the [appellate] record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion." (*Mooc, supra*, 26 Cal.4th at p. 1231.) And, if this court ultimately determines that not all responsive documents were disclosed, defendant asks that we remand to afford him an opportunity to demonstrate prejudice from the court's error. (*People v. Gaines* (2009) 46 Cal.4th 172, 180-181 (*Gaines*).)

The People agree we must independently review the in camera proceedings. But the People maintain that, on this record, defendant can show neither abuse of discretion nor prejudice from the trial court's ruling that no documents responsive to the *Pitchess* motion existed.

We review a trial court's ultimate ruling on a *Pitchess* motion for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

Having reviewed the in camera hearing record, we agree the trial court did not follow the procedure for in camera *Pitchess* hearings as outlined by statute and the courts. Still, we need not list the shortcomings of the procedure employed, because we conclude any failures in this regard were harmless.

As to the guilt phase, we are generally in agreement with the trial court's misgivings as to whether the *Pitchess* motion was improvidently granted. On appeal, and

before the trial court, defendant asserted, "the information sought may have led to circumstantial evidence that the officers deliberately put [defendant] in a cell with a convicted sex offender, knowing that . . . he had single-cell status because he posed an immediate threat of danger to others." And if so, it could give rise to provocation, a defense to malice.

But as our supreme court has explained, provocation inciting a defendant to homicidal conduct in the heat of passion must be caused *by the victim* or be conduct reasonably believed by the defendant to have been engaged in by the victim. (*People v. Verdugo* (2010) 50 Cal.4th 263, 294; *People v. Avila* (2009) 46 Cal.4th 680, 705 [" '[T]he victim must taunt the defendant or otherwise initiate the provocation' "].)

Accordingly, here, where the information sought pertained only to the officers' conduct, no responsive discovery could possibly be relevant to a defense of provocation. (See *Gaines*, *supra*, 46 Cal.4th at p. 182 [defendant must demonstrate " 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense . . . .' "].) Hence, even the low threshold for a *Pitchess* motion was not met. (See *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016 [while "a defendant need only demonstrate that the scenario of alleged officer misconduct could or might have occurred," the declaration must propose a defense and articulate how it would be supported by the discovery sought].)

Any procedural error during the in camera hearing was therefore harmless as to the guilt phase in two respects: For one, the information sought was not admissible for any guilt phase defense. For another, given that there was no logical link to a valid defense, the *Pitchess* motion should not have been granted in the first place — at least as far as the guilt phase.

As to the penalty phase, the procedural error was also harmless, but for a different reason. The *Pitchess* motion asserted the information sought could also be used in the penalty phase "to show that the circumstances of the crime extenuate its gravity." We

10

agree with this. If correctional officers intentionally placed defendant in the victim's cell, it might well have served as a mitigating factor, during the penalty phase, on the theory that such a circumstance would extenuate the gravity of the offense. Indeed, the defense could have argued that defendant would not have killed but for the officers' conduct.

Still, the very relief that evidence might have afforded during the penalty phase, was later obtained when the trial court granted defendant's section 190.4, subdivision (e) motion, reducing the death sentence to life without the possibility of parole. Accordingly, defendant could not have received a more favorable outcome even with evidence he had been deliberately placed with the victim. Any procedural error in the *Pitchess* hearing was therefore also harmless as to the penalty phase.

Having found the procedural errors in the *Pitchess* hearing harmless as a matter of law, we need not remand for any purpose.

## II. Sentencing Errors

Defendant also raises three claims of sentencing error. All have merit.

### A. Section 654 Violation

Defendant contends the trial court violated section 654 by sentencing him to concurrent terms on counts 1 and 2 — murder and assault by a life prisoner — because the counts were based on the same conduct. The People concede error, and we agree.

Under section 654, a person may not be punished twice for the same act. (*People v. Mesa* (2012) 54 Cal.4th 191, 195.)

Here, the information alleged that the murder and assault occurred on the same date and involved the same victim. The prosecutor argued to the jury that the two counts were based on the same act.[7] There is no evidence that defendant somehow harbored separate intents and objectives as to the two counts.

---

[7] After devoting his entire guilt-phase opening argument to count 1, the prosecutor added at the very end of the argument: "So based on . . . everything that I have told you today,

11

We will therefore modify the judgment to strike the concurrent term and to instead stay execution of the term of life without the possibility of parole imposed on count 2. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468 [where section 654 applies, the trial court must impose sentence on both counts and stay execution of the sentence on one of the counts].)

## B. Unauthorized Parole Revocation Restitution Fine

The trial court orally imposed a $10,000 restitution fine. (§ 1202.4, subd. (b).) And though the court never orally imposed a parole revocation restitution fine, both the sentencing minute order and the abstract of judgment reflect a suspended $10,000 parole revocation restitution fine. (§ 1202.45.) The parties agree that fine is not imposed where a defendant is sentenced to life without the possibility of parole. (*People v. Jenkins* (2006) 140 Cal.App.4th 805, 819.) We will therefore direct the trial court to correct the abstract of judgment.

## C. Three Strikes Sentencing

Finally, at sentencing, the trial court noted that the jury had found defendant had four prior strikes. The court doubted that the strikes would "make any difference" given defendant's sentence of life without the possibility of parole. But the court, nevertheless, imposed a term of 25 years to life "based upon those priors." The abstract of judgment also states that defendant was sentenced pursuant to the "Three Strikes" law.

The parties correctly agree that Three Strikes sentencing does not apply where a defendant is sentenced to a term of life without the possibility of parole because such a term is not a determinate term and does not contain a minimum term. (*People v. Mason*

---

all the evidence that you have seen before you, I think that you can come to this deduction of facts: That the defendant was guilty of the premeditated murder of [the victim]. And if he is guilty as a premeditator against [the victim], then obviously, because he is a life inmate . . . , that he did, in fact, commit an assault with malice aforethought as a life inmate within the walls of the penal institution with great bodily injury which caused the death within a year and a day."

(2014) 232 Cal.App.4th 355, 368-369; *People v. Coyle* (2009) 178 Cal.App.4th 209, 219; *People v. Smithson* (2000) 79 Cal.App.4th 480, 503.)  We will therefore direct the trial court to delete the Three Strikes reference from the abstract of judgment.

## DISPOSITION

Defendant's sentence is modified by striking the imposition of a concurrent term on count 2 and instead staying execution of the term of life without the possibility of parole on that count pursuant to section 654.  The trial court is directed to prepare a corrected abstract of judgment reflecting that change, as well as deleting the parole revocation restitution fine under section 1202.45, and the reference to Three Strikes sentencing.  The trial court is further directed to furnish a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

As modified, the judgment is affirmed.


                                        /s/
                                    MURRAY, J.



We concur:



      /s/
BLEASE, Acting P. J.



      /s/
ROBIE, J.


13